JACKSON, *ex dem.* BOWERS *and others against* CRAFTS.

Where mort-gaged premi-ses were put up for sale at pub-lic auction, pur-suant to adver-tisement and notice, given by virtue of a power of sale contained in the mortgage,

THIS was an action of ejectment, tried at the *Otsego* circuit, in *May*, 1819, before Mr. Justice *Yates*.

The declaration contained four counts : the first count was on the demise of the three lessors of the plaintiff, *jointly ;* and the other counts were on the separate demise of each lessor.

and the assignee of the mortgagee, acting as auctioneer, while the premises were up, on seeing the defendant, a purchaser under the mortgagor, approaching the place of sale, immediately knocked down the premises, for half the sum due on the mortgage, to his brother, as the highest bidder, so as to prevent competition ; *Held,* that the sale was fraudulent and void, and that the purchaser, to whom a deed had been executed, acquired no title under it.

The assignee of a bond and mortgage having put the bond and mortgage into the hands of his attorney for foreclosure, afterwards told the attorney not to receive the money due, if it was tendered, nor do any thing further about it, as he would attend to the business himself; proceedings for a sale under the power contained in the mortgage having been commenced, a purchaser under the mortgagor, on the day before the sale at auction was to take place, tendered the principal and interest due, and costs of the proceedings to the attorney, in whose hands the bond and mortgage then were, who refused to receive the money, assigning the instructions of his client as a reason for his refusal ; *Held,* that this was a good tender to the principal.

If a legal tender is made of the money due on a bond and mortgage to the mortgagee, or his assignee or attorney, which is refused, the *land* is discharged from the mortgage, though the debt remains.

NEW-YORK,
May, 1820.

JACKSON
v.
CRAFTS.

The defendant was in possession under title derived from *Elnathan Osborn*, who had executed a bond to *Bowers*, one of the lessors, dated the 28th of *April*, 1813, for 214 dollars, payable in five years, with interest; to secure the payment of which he executed a mortgage of the premises in question, being 100 acres of land, to *B. Bowers*, who assigned the bond and mortgage to *Reuben M'Collum*, another lessor of the plaintiff, on the 6th of *January*, 1818. The principal and interest on the bond remaining due and unpaid, *Reuben M'Collum*, by virtue of a power of sale contained in the mortgage, advertised the premises for sale, according to the statute; and pursuant to the notice, the premises were sold at public auction, at the house of *Joseph Mann*, in *Cooperstown*, on the 18th of *August*, 1818, to *David M'Collum*, the other lessor, as the highest bidder, for two hundred and thirty-two dollars, and *Reuben M'Collum*, on the same day, executed a deed to *David M'Collum*, for the premises in question, pursuant to such sale. Two witnesses for the plaintiff testified, that *Robert M'Collum* acted as auctioneer at the sale; that there were several bids, but that of *David M'Collum* was the highest; that while *Robert M'Collum* was crying the premises for sale, and after they had been up for some time, the defendant appeared in the street, and was approaching the place of sale, from which he was not far distant, when the premises were struck off; that there was some precipitation in striking off the premises, after the defendant appeared; that, (as the witnesses thought,) *Robert M'Collum* must have seen the defendant approaching, and it was publicly mentioned in the hearing of *Robert M'Collum*, that the defendant was coming; and the premises were then immediately struck off to his brother, *David M'Collum*.

The defendant gave in evidence a deed dated the 26th of *December*, 1814, for 50 acres, part of the premises, from *Elnathan Osborn* to *Elias Osborn*, who conveyed the same to the defendant, by deed dated the 31st of *July*, 1818; also a deed from the sheriff of *Otsego* to the defendant, dated the 24th of *May*, 1818, for the whole lot, sold on an execution against *Elnathan Osborn*, and under which the defendant took possession of the premises. It was, also,

proved, that the bond and mortgage had been left with an attorney, *J. Starkweather*, for foreclosure; that on the 17th of *August*, 1818, the defendant came to the attorney, and tendered to him the sum of 338 dollars and 13 cents, in gold and silver; that the amount of principal and interest due on the mortgage, together with the costs of advertising the sale under the mortgage, as stated by the attorney, was 337 dollars and 17 cents; but the attorney refused to accept the money so tendered, saying that he had been instructed by *R. M'Collum*, that in case a tender should be made, not to receive the money, as he, *Robert M'Collum*, had determined not to take it, but would go on and sell, at all events. The attorney admitted, that the amount of the sum tendered was sufficient. The defendant then deposited the money with the witness, who has ever since been ready to pay it over to *M'Collum*. The witness further stated, that *David M'Collum* told him that he knew that the money had been tendered, before he purchased. The attorney, who was sworn as a witness, confirmed the evidence of the other witness as to the tender; he said that *M'Collum* had forbid him to receive, or do any thing more about it, for that he, *M'Collum*, would attend to the business himself; and that he informed *David M'Collum*, on the day of the sale, of the tender having been made, but whether it was before or after the sale, the witness did not recollect. He did not communicate it to *Robert M'Collum* until after the sale: That the bond and mortgage were in his possession when the tender was made.

A verdict was found for the plaintiff, subject to the opinion of the Court on the above case, which was submitted to the Court, without argument.

WOODWORTH, J. delivered the opinion of the Court. The mortgage having been assigned by *Bowers*, before the commencement of the action, the plaintiff cannot succeed, unless he makes out a subsisting title in one, or both of the other lessors. It is contended on the part of the plaintiff, that the sale and conveyance of the mortgaged premises to *David M'Collum*, vested in him the legal estate. To support this, it must be shown, that the sale was " *regular, fair,*

and with good faith," according to the requisitions of the statute; if it was not, the purchaser acquired no title. *Reuben M'Collum*, the assignee of the mortgagee, acted as auctioneer; previous to the sale, he directed his attorney not to receive payment of the money due.

The bond and mortgage were, however, left in the attorney's hands. From the subsequent conduct of *M'Collum*, it may be inferred, that he expected a tender would be made, and being determined to sell, for that cause instructed his attorney not to receive the money. The circumstances which took place at the sale cannot be reconciled with fairness and good faith. The defendant, who had an interest in the premises, was approaching towards the place where the auction was held, and was seen by *Reuben M'Collum;* he was requested to wait until he came, but he did not, and immediately struck down the premises to his brother *David*, (who knew that the money had been tendered) for two hundred dollars, one third less than the amount due. It is manifest this was done to prevent the bidding of *Crafts*, and to get rid of competition. The proceeding was unfair and fraudulent. The sale must be deemed to have been made to *David M'Collum*, for the benefit of *Reuben;* the motive for such precipitation is apparent; the contemplated speculation might have been defeated had there been a moment's delay. To sanction such proceedings would be subversive of justice, as well as a clear violation of the statute, under which the sale was made; and consequently, no title was acquired to support the demise from *David M'Collum*. The title of *Reuben M'Collum* remains to be considered. The first question is, whether the tender to *Starkweather* was a legal and valid tender; and if it was, then, whether such tender and refusal were equivalent to payment, and discharged the land from the lien of the mortgage. It is well settled that a tender to an agent authorised to receive payment, is as good as a tender to the creditor in person. (1 *Campb. N. P. Rep.* 478.) That *Starkweather* was employed to conduct the proceedings, as attorney for *M'Collum*, is admitted; but it is urged, that before the tender was made, his power was revoked, in consequence of *M'Collum's* instructions not to receive

the money, if it was offered, and saying that he would at-. tend to the business himself. This was no general revoca-. tion, nor was it so intended. *M·Collum* having determined not to receive the money, was willing to dispense with the services of his attorney in conducting the sale. The instructions must be understood as limited to these objects. A general revocation was evidently not contemplated. The bond and mortgage still remained in the hands of the attorney. Under such circumstances, the right of the attorney to receive the money continued; *M·Collum* could not legally prohibit it, and *Starkweather* had the same right to receive payment as his principal. The case of *Moffat* v. *Parsons* (5 *Taunt. Rep.* 307.) is analogous. In that case, the plaintiff expecting a tender would be made, instructed his clerk, previously authorised to receive money, that if the money was offered, he should not receive it, stating that he had put the matter into the hands of his attorney. The clerk, on tender made, refused to receive the money, and assigned the reason; yet this was held to be a good tender to the principal. The money having been tendered to a person authorised to receive it; the next question is, what is the effect and legal operation of such tender, as it respects the mortgage. The bond is not in question—if payment had been made, then all right and title under the mortgage would cease, because " a mortgage, until foreclosure, is now considered as a personal engagement only, in which the land is merely pledged for the money, and remains in the mortgagor to every purpose, except that of securing the debt." (*Powell on Mortgages*, 170.) In the case of *Waters* v. *Stewart* (1 *Caines' Cas. in Error*, 69.) the late Chief Justice *Kent* observed, " that the assignment of the debt, or even forgiving it, and that by parol, draws the land after it, as a consequence." From the nature of the interest the mortgagee has, there is no necessity for a reconveyance by him to the mortgagor, after the mortgage has been paid; when that is done, the mortgagee has no title remaining in him to convey, and consequently, by our laws, on payment of the money, he is not deemed a trustee holding the legal estate for the benefit of the mortgagor. The only remaining question is, whether a tender and refusal

are equivalent to payment. A tender by one party of payment of a debt or performing a duty, and a refusal by the other to accept thereof, do, in some cases, amount to a discharge. In *Bacon Abr.* 457. title *Tender*, (*F.*) it is laid down, that " if *A.* borrow one hundred pounds of *B.*, and mortgage land to *B.*, with condition for the payment thereof, in this case, if *A.* tender the money, and *B.* refuse to accept thereof, thel and is discharged, but the debt, which existed before the mortgage, remains, and may be recovered in an action." In *Co. Litt.* 209. *b.* sec. 338. the same doctrine is recognised : the reason assigned is, that the money is collateral to the land, and by the tender, the land is discharged ; and it shall be accounted the folly of the mortgagee, that he refused payment when a lawful tender was made to him. (*Co. Litt.* 207. *a.* sec. 335. 20 *Viner*, tit. *Tender*, *N.* sec. 4.)

If this principle be correct, and we consider it as well settled, then the plaintiff has not shown a good title in his lessor, *Reuben M'Collum;* and, consequently, judgment must be rendered for the defendant.

Judgment for the defendant.