The common law recognized two kinds of landed security, respectively known as the vivum vadium, and mortuum vadium. The vivum vadium consisted of a feoffment to the creditor and his heirs, until out of the rents and profits he had satisfied himself his debt. The creditor took actual possession of the estate, and received the rents and applied them from time to time in liquidation of the debt. When it was satisfied, the debtor might reenter and maintain ejectment, and it was said to have been called vivum vadium, because neither debt nor estate was lost. This mode of security is said not to have been very general, and it was superseded by the mortuum vadium, or mortgage, so called because on breach of condition the estate was rendered indefeasible in the mortgagee, and absolutely lost to the mortgagor. Littleton, section 332, thus describes themortuum vadium, or mortgage: "Item: if a feoffment be made upon such condition that if the feoffer pay to the feoffee at a certain day, c., forty pounds of money, that then the feoffee may reënter, c. In this case the feoffee is called the tenant in mortgage, which is as much as to say in French, comemortgage, and in Latin, mortuum vadium; and it seemeth that the cause why it is called a mortgage is, for that it is doubtful whether the feoffer will pay at the day limited such sum or not; and if he doth not pay, then the land which is put in *Page 345 
pledge upon condition for the payment of the money is taken from him forever, and so dead to him upon condition, c. And if he doth pay the money, then the pledge is dead as to the tenant." Upon the execution of such a mortgage, the legal estate vests in the mortgagee, subject to be defeated on performance of the condition by the mortgagor. To divest the estate of the mortgagee, it was necessary for the mortgagor to make payment at the day according to the condition of the mortgage; or if, at the appointed day, legal tender of the money was made and refused, the condition was satisfied equally as if payment had been made, and the mortgagor or his heirs might reenter. This appointed day for the payment of the money, to secure which the mortgage was given, became known in legal parlance as the law day. But a distinction was taken between a sum in the nature of a gift secured on the land, and where the security was given to secure a debt due. The former was, in the case of a tender and refusal, absolutely lost; but the latter, the debt, was regarded as still subsisting as a personal duty, and might be recovered by action at law. As if A borroweth a hundred pounds of B, and after mortgageth lands to B, upon condition for payment thereof, if A tender the money to B, and he refuseth it, A may enter into the land, and the land is freed forever of the condition; but yet the debt remaineth, and may be recovered by action of debt. But if A, without any loan, debt or duty preceding, enfeoff B of land upon condition for the payment of a hundred pounds to B, in the nature of a gratuity or gift, in that case if he tender the hundred pounds to him according to the condition, and he refuseth it, B hath no remedy therefor. (Co. Litt., 209 b.) Littleton, in section 335, says that it is to be remembered that when such tender of the money is made, and the feoffee refuse to receive it, then the feoffee hath no remedy by the common law, because it shall be accounted his own folly that he refused the money when a lawful tender of it was made to him. The same writer, in section 338, says that in all cases of condition for payment of a certain sum, in gross, touching lands or tenements, if lawful tender be once refused, he which ought to *Page 346 
tender the money is of this quit, and fully discharged forever afterwards.
Coke, in his Commentaries, in reference to these rules, as applicable to tenders and their effect, says it is to be implied that the tender is made at the due time and place according to the condition. The reason for this is obvious, under the rules already stated, as applicable to the absolute vesting of the estate in England in the mortgagee, upon the condition broken. If tender or payment was not made at the law day, according to the condition, the estate vested absolutely in the mortgagee; and by the strict rules of the common law, all interest or right therein, of redemption, passed from the mortgagor. If the mortgage debt was afterwards paid by the mortgagor, a reconveyance of the estate by the mortgagee was necessary to vest the same in the mortgagor. By the civil law, the debtor might redeem the estate on payment of his debt, at any time before sentence passed. The doctrine of forfeiture of the common law was decidedly opposed to this principle. In the eye of equity, the absolute forfeiture of the estate, whatever might be its value, on the breach of the condition, was regarded as a flagrant injustice and hardship, although perfectly accordant with the system on which the mortgage itself was grounded. The courts of equity, therefore, stepped in to moderate the severity with which the common law followed the breach of the condition. Leaving the forfeiture to its legal consequences, they operated on the conscience of the mortgagee, and acting in personam, and notin rem, they declared it unreasonable that he should retain for his own benefit what was intended as a mere pledge; and they adjudged that the breach of the condition was in the nature of a penalty which ought to be relieved against, and that the mortgagor had an equity to redeem on payment of principal and interest and costs, notwithstanding the forfeiture at law. Thence grew up the system in England of filing bills in equity to redeem, and in this State the filing of bills in equity by the mortgagee to foreclose and cut off this right of redemption in the mortgagor. *Page 347 
The rule in England was therefore ancient and well settled, that payment on the law day extinguished the interest of the mortgagee in the lands mortgaged; and tender and refusal at the same time produced the same result. But payment after, and acceptance, did not revest the estate in the mortgagor without a reconveyance from the mortgagee; and a tender and refusal would, of course, not produce that result. The mortgagor's only remedy was to avail himself of the benefit of the rule in equity, and file his bill to redeem. The only question presented for our consideration in this case is, whether a tender of the sum due on a mortgage, after the day appointed by it for its payment, extinguishes the lien of the mortgage on the land covered by it. We have seen that by the common law such tender and refusal upon the law day extinguishes the lien of the mortgage, though the debt remains. In this State, the law is well settled that a mortgage is a mere security or pledge of the land covered by it for the money borrowed or owing, and referred to in it, and that the mortgagor remains the owner of the estate mortgaged, and may maintain trespass as against even the mortgagee. (Runyan v.Mersereau, 11 John., 534.) The debt, in the eye of the law, thus becomes the principal, and the landed security merely appurtenant and secondary; and the rights of the parties must be governed by those principles of law applicable to analogous cases. Acceptance of payment of the amount due on a mortgage, at any time before foreclosure, has always been held to discharge the incumbrance on the land; as acceptance of the amount for which personal property was held discharged it from the pledge. Tender and refusal are equivalent to performance. (Kemble v.Wallis, 10 Wend., 374.) This is to be taken with the reservation already stated, that the debt or duty remained, and that the rejected tender, at or after the stipulated time of payment or performance, has the effect only to discharge the party thus making it from all the contingent, consequential or accessary responsibilities and incidents of his contract, but without releasing his prior debt. (Coit v. Houston, 3 John. Ca., 243.) In Hunter v. LeConte (6 Cow., 728), the Supreme Court held that a tender of *Page 348 
rent takes away the right to distrain till a subsequent demand and refusal; but it does not take away the right to sue for the rent as for a debt. It only saves the interest and costs. And that a tender of rent makes a distress wrongful, though the tender be not made till after the rent day. It will readily be perceived that the principle of this case bears directly upon the question now under consideration; and it is not perceived, if it be sound, why a tender and refusal of the amount due on a mortgage does not extinguish its lien, equally with a tender of rent and refusal, which, as we have seen, extinguishes the right of distress. But a still closer analogy to the present question is presented by the law of tender, as to the lien on goods pledged. Lord Ch. J. HOLT, in his opinion in the celebrated case of Coggs v. Bernard (2 Lord Ray., 909), speaking of the fourth class of bailments, says: "If the money for which the goods are pawned be tendered to the pawnee before they are lost, then the pawnee shall be answerable for them, because the pawnee, by detaining them after the tender of the money, is a wrongdoer, and it is a wrongful detainer of the goods, and the special property of the pawnee is determined." So also COMYN: "By tender of the money, the property in the goods is determined, and the pledge ought to be returned. But if the pawnee refuse to restore the pledge upon tender, trover lies against him." (Comyn's Dig., tit. Mortg., A, and cases there cited.) Holding, as we do, therefore, in this State, that the land mortgaged is but a security for the debt due to the mortgagee, in other words, a pledge to him to secure its payment, it is difficult to see why the principles enunciated and well settled in reference to the pledge of personal property do not apply, and why a tender and refusal at any time of the full amount of the debt due does not extinguish the lien of the mortgagee, or pledgee, in the one case as it clearly does in the other.
But I think we are not left at liberty to settle this case on principle, but are to regard it as authoritatively disposed of by the courts of this State. A very careful examination of the decisions has brought my mind to the conviction, contrary *Page 349 
to my first impression, that we should regard the question now presented as not open to further discussion. I shall recur to the cases in which this question has arisen; and I think an examination of them will lead to the same conclusions to which I have arrived.
The first in chronological order is that of Jackson v.Crafts (18 Johns., 110), decided in the Supreme Court in 1820. In that case, the defendant, the mortgagor, while the advertisement of the sale of the mortgaged premises was pending, tendered to the plaintiff, an assignee of a bond and mortgage on premises occupied and owned by the defendant, the amount due on the mortgage and the expense of the advertisement of sale. The tender was made to the attorney for the plaintiff, who had in his hands the bond and mortgage for foreclosure. The money was refused and the sale took place, and the plaintiff became the purchaser and brought ejectment for the premises. The case turned upon the effect of the tender, made, as it was conceded, after the law day. The court held that the tender and refusal, although made after the law day, extinguished the lien of the mortgage, and that the plaintiff could not recover. This case has been criticised and its authority attempted to be weakened, because, in the citations from Bacon and Coke, the distinction was not noticed that they referred to and spoke of the effect of tenders at the law day. But an examination of the context of the opinion shows, I think, that the learned judge who delivered it was not unmindful of this fact, and intended to hold that, in the light mortgages were regarded in this State, it was quite unimportant whether the tender was made at the law day or after. The court, in that case, certainly held that a tender after the law day extinguished the lien of the mortgage.
In Merritt v. Lambert (7 Paige, 344), decided by Chancellor WALWORTH in 1838, he held that a tender of the amount due on a mortgage after the law day did not extinguish the lien of the mortgage. He reviews the decision of the Supreme Court inJackson v. Crafts (supra), and holds that it is not sound law. *Page 350 
The same question arose again in the Supreme Court, in the case of Edwards v. Farmers' Fire Insurance and Loan Company (21 Wend., 467). It is to be observed that this case and that ofMerritt v. Lambert originated from the same transaction. Edwards the mortgagor, after the law day had passed, tendered to the defendants, the mortgagees, the full amount of the mortgage and the costs and expenses of a foreclosure and sale upon which the defendants had become the purchasers. It was contended on the part of the plaintiff, and so held by the court, that the defendants, by the sale at which they became purchasers, on the foreclosure of a mortgage to them, stood in the same position they did originally as mortgagees, and had no higher or other rights or equities. Other questions arose in the case; but the main one discussed, and upon which the Supreme Court passed, was, whether the tender and refusal after the law day extinguished the lien of the mortgage. The opinion of the court was delivered by COWEN, J., who exhausted the law on the subject. His reasons and the authorities there cited seem to me fully to sustain the conclusion to which he arrived, that in this State a tender and refusal of the amount due, at any time after the mortgage debt became due, extinguished the lien of the mortgage. Chief Justice NELSON concurred in this result — Justice BRONSON dissenting. The case was taken to the Court for the Correction of Errors, and the judgment of the Supreme Court was affirmed. (26 Wend., 541.) Two opinions were delivered in that court: one by Chancellor WALWORTH, in favor of reversing the judgment of the Supreme Court, on two grounds — first, that the agreement for sale made by the company with the Merritts, mentioned in the pleadings, was a valid sale by the defendants of the premises within the meaning of their charter, and that consequently they were no longer the owners of the mortgaged premises; second, that the tender of the mortgage money after there had been a default to pay it at the day cannot have the legal effect of depriving the mortgagee of his security, if for any cause he does not think proper then to receive the amount so tendered. The Chancellor enlarges upon the second ground, *Page 351 
and restates the reasons which he had given for his opinion inMerritt v. Lambert (supra). He says: "It now remains for the other members of this court to decide whether the Vice-Chancellor and Mr. Justice BRONSON and myself, on the one side, or the other two Justices of the Supreme Court and the Assistant Vice-Chancellor, on the other, have taken the correct view of the important legal questions involved in the case." It does not appear from the reported cases whether the Vice-Chancellor and Mr. Justice BRONSON concurred with the Chancellor in his views on the second point above referred to, and which, it is evident, he regarded as the controlling one in the case. This question is the main one considered by Senator VERPLANCK, who delivered the opinion of the court for affirmance. He discusses this question with his usual learning and research, and arrives at the clear conclusion that a tender of the amount due on a mortgage after the law day, extinguishes the lien of the mortgage. It does not appear distinctly that all the judges voting for affirmance concurred with him upon this ground; but I think the case, as stated by the reporter, shows that they must have done so. If we should adhere to the rule laid down by this court in James v. Patten (2 Seld., 9), it must be held that the judges concurring in the opinion delivered by Senator VERPLANCK are to be regarded as agreeing with him upon all the points discussed; but, irrespective of that rule, we think it quite clear that the case was decided on that point.
The same question was again presented in the Supreme Court inArnot v. Post (6 Hill, 65). The court was then held by the same judges as sat in Edwards v. Farmers' Fire Insurance andLoan Company (supra). BRONSON, J., delivered the opinion of the court in this case, and says: "It has always been held that a tender at the day discharged the lien of the mortgage; and although a clear departure from the old law, it is fully settledin this State that a tender after the day will have the same effect. (Citing Jackson v. Crafts, and Edwards v. Farmers'Loan Company, supra.) I know that in the case of Edwards v.Farmers' Loan Company the law day was extended by the charter of the company; but the broad principle was asserted *Page 352 
that a tender at any time before foreclosure, although the law day has passed, will have the effect of discharging the lien of the mortgage." The judgment in this case was reversed in the Court for the Correction of Errors, by a vote of eleven to nine, (2 Denio, 344.) Senator HARD, who delivered the first opinion for reversal, says: "It is undoubtedly a well settled principle, that a tender at the day of the amount secured by a mortgage upon lands extinguishes the lien. It has been decided in this State, although the principle is a departure from the ancient law, that a tender after the day and before foreclosure discharges the lien." But he adds, that, "where the mortgage has been foreclosed, there is no authority for saying that a tender tothe purchaser under the foreclosure will extinguish his
title." He then discusses the cases of Jackson v. Crafts, andEdwards v. Farmers' Loan Company, and holds that they decide nothing in conflict with this proposition. Upon this ground he was for reversal of the judgment of the Supreme Court; and he certainly advances nothing in conflict with what he states had been decided in this State, to wit, that a tender after the day and before foreclosure discharges the lien. An examination of the opinion delivered by Senator PORTER will show that his vote for reversal proceeded on the ground that the purchaser at the mortgage sale could not be divested of the title he acquired at it, by a tender of the amount due on the mortgage by the mortgagor. I do not understand this Senator as advancing any idea in conflict with the rule of decision as stated by Senator HARD.
It is true that Senator JOHNSON, in his opinion, proceeds to show that the cases of Jackson v. Crafts and Edwards v.Farmers' Loan and Trust Company fail to establish the rule that an unaccepted tender to the creditor by one entitled to redeem a mortgage, made after the law day, will extinguish the lien of the mortgage. After discussing these cases, he says: "I think, therefore, it may be safely assumed that there is no binding authority requiring us to hold that a mere tender after the day of payment has passed, will have the effect of discharging the lien." He then discussed the effect of the sale upon the right *Page 353 
of redemption; and upon both grounds was in favor of reversing the judgment of the Supreme Court. Senator SEDGWICK concurred with Senator JOHNSON substantially, and Senators BOCKEE and CLARK delivered verbal opinions in favor of reversing, on the ground that a tender after the law day did not extinguish the lien. TALCOTT, Senator, who delivered an opinion for affirmance, discusses both grounds; and, in reference to the tender extinguishing the lien of the mortgage, says, after citing the cases of Jackson v. Crafts and Edwards v. Farmers' LoanCompany, and that of Burnett v. Denniston (5 John. Ch., 35): "These cases hold that a tender will discharge the lien of the mortgage, though not made until after the law day; and that doctrine is in accordance with the theory of mortgages now well established by a series of recent decisions." GARDINER, President, delivered an opinion in favor of affirmance, discussing only the effect of the sale; and Senator LESTER also delivered an opinion for affirmance, on what grounds it is not stated. Assuming that the nine members who voted for affirmance concurred in the opinion of Senator TALCOTT, and that the five Senators who voted for reversal, and expressed no opinion, concurred in the views expressed by Senators JOHNSON, SEDGWICK, BOCKEE and CLARK, we then have eleven members of the court affirming it to be the well settled rule in this State that a tender after the law day will extinguish the lien of the mortgage.
This brief review of the course of decisions in this State, it is submitted, shows that, in truth, the rule has prevailed here, and been well recognized, ever since the decision of Jackson andCrafts in 1820; and that the doubts thrown upon that decision by the Chancellor, in Merritt v. Lambert, have never been adopted by any other court in this State, but were distinctly repudiated and overruled by the Court of Errors in Edwards v.Farmers' Loan and Trust Company, and by the Supreme Court subsequently in Arnot v. Post; and this rule was again affirmed in that case by the Court of Errors, in 1845. We are bound, therefore, I think, to regard this as the settled law of this State, and are not at liberty to return to *Page 354 
the old rule of the common law, which has been shown to be wholly inapplicable to the light in which mortgages are regarded in this State.
It is not perceived how the mortgagee is to be embarrassed, or his security impaired, by the adoption of this rule, as seems to be supposed by the Chancellor in Edwards v. Farmers' LoanCompany (26 Wend., 552). If the mortgagor does not tender the full amount due, the lien of the mortgage is not extinguished. The mortgagee runs no risk in accepting the tender. If it is the full amount due, his mortgage lien is extinguished and his debt is paid. This is all he has a right to demand or expect, and all he can in any contingency obtain. His acceptance of the money tendered, if inadequate and less than the amount actually due, only extinguishes the lien pro tanto, and the mortgage remains intact for the residue. A much greater hardship might be imposed, and serious injury be produced, by holding that the mortgagor cannot extinguish the lien of the mortgage by a tender of the full amount due. It has never occurred to any judge to argue that a pawnee was in great peril, and in danger of losing the benefit of his pawn, by the enforcement of the well settled rule, that a tender of the amount of the loan and interest, and refusal, extinguished the lien on the pawn. Littleton well says, that it shall be accounted a man's own folly that he refused the money when a lawful tender of it was made to him. The only effect upon the rights of the mortgagee is, that the land or thing pledged is released from the lien, but the debt remaineth.
The only remaining question to be considered is, whether the tender in this case was well made, it not being followed with the allegation of touts temps prist, and the money not having been brought into court. It will be seen, by reference to the authorities, that these are not required when the tender has only the effect of extinguishing the lien, and does not operate to discharge the debt or sum owing. In the latter case, the averment of touts temps prist, followed up by bringing the money into court, is essential to a good plea of tender. (Hume v.Peploe, 8 East., 168; Giles v. Hartis, 1 Lord Ray., 254.) But if a *Page 355 
man make a bond for the payment of a loan of money, and afterwards make a defeasance for the payment of a lesser sum at a day, if the obligor tender the lesser sum at the day, and the obligee refuse it, he shall never have any remedy by law to recover it, because it is no parcel of the sum contained in the obligation. And in this case, in pleading of the tender and refusal, the party shall not be driven to plead that he is yet ready to pay the same, or to render it in court. (Co. Lit., note to § 335.) The same principle was held by the Supreme Court of this State in Hunter v. Le Conte (6 Cow., 728), and cases there cited.
No question in reference to the taxes arises in this cause, upon the facts found by the referee. The referee found in favor of the appellants upon the question relating to them; and to his finding in that respect, the plaintiff took no exception. It is not, therefore, to be reviewed in this court.
The judgment appealed from should be reversed, and a new trial ordered, with costs to abide the event.