## HUTCHINGS vs. MUNGER.

S. sold a canal boat to H. for $2400, a part of which was paid down, and the balance was secured by the promissory notes of H. payable at future periods. H. was to have possession of the boat, but the title was to remain in S. until the notes were paid. In April, 1860, some of the payments due from H. being in arrear, S. directed the boat to be sold at auction. He had previously waived the technical forfeiture arising from failure to pay at the day, by accepting a payment from H. and by treating him as a purchaser still holding under his contract. Previous to the sale H. tendered to S. the amount due upon the contract. *Held* that such tender was equivalent to performance by H., and the effect of it was to take away from S. the right to proceed and sell the boat as upon a forfeiture, and to put H. in the position he occupied before any forfeiture could be claimed.

*Held also*, that S. occupied substantially the position of a mortgagee or pawnee of the property, and upon H.'s failure to pay, he had a right to resume possession and sell the property—a right equivalent to that of foreclosure by a mortgagee, or sale by a pawnee ; but that right could be defeated by performance, or an offer and tender of performance, before or after the stipulated day ; such a tender standing in the place of, and being equivalent to, performance.

*Held further*, that H. was by his tender, remitted to his original rights, and entitled to the possession of the boat, in the same manner that he would have been upon an actual performance. And that the sale of the boat by S. was improper, and the dispossession of H. illegal.

APPEAL from a judgment entered upon the report of a referee. The action was brought to recover damages for the conversion of a canal boat. The referee found the following facts, viz : That on the 17th September, 1856, one George Silence sold to the plaintiff the canal boat in question, for the sum of $2400, a part of which was paid in hand and the balance was secured by the notes of the plaintiff, falling due at different times thereafter, the last one falling due on the 10th November, 1858. The sale was conditional, and the plaintiff was to have possession and use of the boat, but the title was to remain in the vendor unless the notes and contract were paid as they fell due respectively. The contract and notes were shortly after assigned by Silence to the defendant, who had advanced money to him, and who therefore became and thereafter continued to be the owner of the notes

and contract and boat, subject to the conditions of the sale. Payments were from time to time made upon the notes and contract to the defendant after the assignment, but not as fast as they became due, and at the time the last note and payment fell due, the plaintiff was in arrears to the amount of $800 or $1000, being 10th November, 1858. The plaintiff was allowed to retain possession of the boat, and used the same until the 15th day of November, 1859, when he paid and the defendant received as payment thereon the sum of $281. This sum was paid upon the arrangement and agreement between the parties that the defendant in consideration thereof was to have the seasons of 1860 and 1861 in which to pay the balance of the purchase money. The plaintiff retained possession of the boat thereafter and laid her up at Oswego during the winter succeeding the payment, having a boat-keeper on board. In April, 1860, the defendant authorized one Lake, residing at Oswego, to advertise and sell the boat at auction for the balance remaining due and unpaid on said notes and contract. Prior to the day of sale the plaintiff called on the defendant at Rochester, for the purpose of paying or arranging the amount then due and unpaid on the notes and contract. This was on April 7, 1860, and the defendant then told the plaintiff the boat was advertised for sale at Oswego, to be sold on the 9th April, and his papers had been sent to his agent there; that he must go there and see his agent, Mr. Lake, who would figure up the amount due. In pursuance of this the plaintiff proceeded to Oswego on the 9th day of April, and there tendered and offered to pay to the defendant's agent, Lake, the sum of $1065, $500 being in a check upon the Lake Ontario Bank at Oswego, of Penfield, Lyon & Co., and the balance in the bills of the bank. Lake refused to receive the same, upon the sole ground that the amount was not sufficient to pay the sum due on the contract. The offer of payment was therefore refused, and the boat was thereupon sold and bid off for the defendant for $1200. About twenty days thereafter, the boat and furni-

ture were taken by the defendant from the custody of the plaintiff, and the boat was afterwards sold by him for the sum of $1559. The value of the boat, at the time of the sale, was $1850. The value of the furniture was $65. The amount due and unpaid on the notes and contract, at the time of the sale, was $791.63. The referee further found that prior to and on the day of sale by Lake, and after Lake had informed the defendant by telegraph of the tender, the defendant telegraphed to Lake not to take from the plaintiff less than $1200. The referee found as conclusions of law that under the circumstances of the case as proved, the plaintiff had a legal right on the 9th of April, 1860, to pay or offer to pay to the defendant the amount due and unpaid upon the contract and notes with the expenses incurred in the proceedings to sell the boat, and upon making such tender or offer of payment was entitled to the possession and ownership of the boat as if his contract had been fully performed. That the tender and offer of payment was good and sufficient, the objection thereto having been put distinctly and solely upon the ground of its not being sufficient in amount. The said referee found and decided further as follows: That the tender of $1065 was sufficient to cover the whole amount due and unpaid on the contract. The defendant requested the referee to find that Lake had no right to waive the production of the specie, and to accept bank bills and a check as legal tender. The referee decided that the defendant having instructed his agent not to take less than $1200, and the agent having refused the tender on the ground that the amount was not sufficient, the question of the rights of the agent to waive the tender of specie was not involved. He therefore refused so to find, and the defendant excepted to such refusal. The referee further decided that although the agreement made by Silence to postpone the payment may not have been a legal and binding contract, the fact that such agreement was made, the money paid to Silence, and received by the defendant, who was notified of the agreement, tended to show a waiver by the defendant of the

forfeiture of the contract. The referee further decided that the defendant waived the forfeiture made by the plaintiff of the legal contract; that a note of $150 having been taken up by one Bissell, at the plaintiff's request, the same was a payment to that amount on the contract; that the note due June 1st, 1857, having been produced on the trial by the plaintiff, was sufficient evidence of the payment of the same by him. The referee further found that the plaintiff was entitled to recover of the defendant the difference between the value of the boat and furniture and the amount remaining due and unpaid upon his notes and contract. That such difference was the sum of $123.37, with interest from the ninth day of April, 1860, to the date of his report, being the sum of $203.57; and the referee directed judgment for the plaintiff and against the defendant, for $1325.94, besides costs.

*J. L. Angle,* for the appellant.

*J. Noxon,* for the respondent.

*By the Court,* BACON, J. It is not a matter of much moment whether the sale of the boat by Silence to the plaintiff was, as it is styled by the learned referee, a " conditional sale," or whether it was, as is claimed by the counsel for the defendant, an " executory agreement for a sale." It was in essence a contract of sale; the important fact being that delivery of possession was made to the plaintiff, which he was to retain until the purchase price was fully paid, and when that was done the title became perfect in the plaintiff. If the plaintiff was entitled to continue in the possession of the boat, and had incurred no absolute forfeiture at the time the defendant directed it to be sold, then he was improperly and illegally dispossessed of the property, and could maintain trespass for the damages he has sustained, or trover for the recovery of the property. The question then is, what were the rights of the respective parties on the 9th day of April, 1860, when the defendant undertook to assert what were

claimed to be his rights, and seized and sold the boat. At that time there were confessedly payments in arrear upon the contract price of the boat, and by the strict terms of the agreement the defendant had the right to enter upon and take possession of the boat. It is true the plaintiff alleges and proves that he had made an agreement in November, 1859, that in consideration of a payment then made he was to have an extension of time upon the balance of the purchase money for the two seasons ensuing. As an agreement, this probably had no binding force and effect, since the part payment of a debt already due forms no sufficient consideration for a promise to extend the time of payment of the residue. But the proof was competent in another aspect, since it tended to show, and was indeed pretty persuasive evidence of, a waiver of the forfeiture of the contract which the defendant might otherwise have insisted upon. And indeed the whole conduct of the defendant, down to the hour of the sale, shows that he did not intend to insist upon the forfeiture, which by failure to pay the stipulated sums at the times they respectively fell due, the plaintiff had technically incurred. When called upon at Rochester he obviously treated the plaintiff as a purchaser still holding under his contract, and directed him to repair to his agent at Oswego, who would inform him of the amount he would be expected to pay to fulfill the contract of purchase. The position of the plaintiff, then, on that day, (9th of April, 1860,) was, I apprehend, the same as it would have been had there been no forfeiture : and the inquiry then is whether he then made a valid and sufficient tender, both in point of form and in respect to amount; and whether what he then did amounted to or was equivalent to performance, by which his title was in substance perfected, and his right of possession continued.

The referee has found as a conclusion of law that the tender was good and sufficient, and the facts fully sustain this finding. It was made before the sale, to the agent of the defendant at Oswego, to whom he had sent the papers and a

Hutchings *v.* Munger.

power of attorney to make the sale and do all things needful therein, and to whom also he had expressly directed the plaintiff, when he came to him to ascertain the amount, and satisfy the claims on the boat. It was unqualified by any conditions, and although not in specie no objection was made to it on that account; the agent declining to receive it upon the sole ground that it was not sufficient in amount. That it was sufficient in amount appears clearly by the computation, which shows that on that day considerably less was due on the contract.

As a result of this finding, and of the conclusion that the position of the parties was such that the plaintiff had the legal right on the 9th of April to pay or offer to pay to the defendant the amount due upon the contract, the referee concludes that the plaintiff was thereupon entitled to the possession and ownership of the boat, or, in other words, that the tender and offer to pay, although refused, was equivalent to performance. If right in this, the judgment, with an exception I shall hereafter notice, is right. The defendant's counsel contest the position, and insist that a tender, even conceding it to have been sufficient in all respects, as to form and substance, did not revive the possession of the plaintiff, or give him any right to the boat. He claims that the only result of the unaccepted tender would be to give the plaintiff a right of action for a breach of the contract. If this is all it would prove but a very inadequate remedy, and for aught I can see he would have the right, entirely independent of the tender. I apprehend, therefore, that the true rule is much more comprehensive than this, and that in this case, as in some others, the proposition is true in law, that "tender is equivalent to the performance." The effect of it, if good, as we have seen that it was, is to take away the right to proceed to sell as upon a forfeiture, and to put the plaintiff in the position he occupied before any forfeiture could be claimed. It has the same effect that a tender of the amount due upon a mortgage has, although after the "law day," to wit, to discharge the

lien and prevent a foreclosure. This is the principle established in the case of *Kortright* v. *Cady,* (21 *N. Y. Rep.* 343,) in respect to a mortgage upon real estate; and the reason and the rule are both the same in this case.

In deciding that case the court discuss the general effect of a tender, and show that it extends to a contract in relation to personal property, as well as real estate. Thus it is said that a tender of rent makes a distress unlawful although it is not made until after the rent day. In relation to goods pledged, if the money for which they are pledged be tendered, the special property of the pawnee is determined, and it is laid down by Baron Comyn (*Dig. tit. Mortgage, A.*) that if the former refuse to restore the pledge, trover lies against him. The instantaneous effect is said to be to discharge any collateral lien as a pledge of goods, or the right to distrain. If the creditor refuses to accept he justly loses his security. "It is impossible," says Comstock, J. "to hold otherwise, although the tender be made after the day, unless we also say that the mortgage which was before a mere security, becomes a vested estate by reason of the default. (*Kortright* v. *Cady,* 21 *N. Y. Rep.* 366.) The same reasoning applies here. The defendant occupies substantially the position of a mortgagee or pawnee of the property. Upon failure to pay by the plaintiff pursuant to the contract, he had a right to resume possession and sell the property—a right equivalent to that of foreclosure by a mortgagee or sale by a pawnee; but as in these cases so in the one before us, that right could be defeated by performance, or an offer and tender of performance before or after the stipulated day, and the tender if sufficient and superior to all legal exception, stands in the place of and is equivalent to performance. That was the condition of these parties, and it accordingly follows that the plaintiff was by his tender remitted to his original rights and entitled to the possession of the boat, in the same manner that he would have been upon an actual performance. The sale was consequently improper, and the dispossession wholly illegal.

Hutchings *v.* Munger.

But although right in principle, as I think, the referee has committed an error in reference to the amount of the judgment, which requires to be corrected. He held that the plaintiff was entitled to recover the difference between the value of the boat and furniture and the amount remaining unpaid upon the contract. It does not appear what became of the tender, but the defendant should in some way be entitled to the benefit of it, and this can only be by allowing the amount and deducting it from the value of the boat and furniture, and giving judgment for the balance. It was not necessary for the plaintiff to bring the money into court under an allegation of *tout temps prist,* for this is not required when the effect of the tender is only to discharge the lien, and not to extinguish the entire liability. (*Kortright* v. *Cady,* 21 *N. Y. Rep.* 354.) The creditor by refusing to accept does not forfeit his right to the thing tendered, but he loses his collateral rights or securities. The tender was a concession by the plaintiff that so much was due, and this could not be withdrawn and the defendant lose the benefit of the offer, and he was entitled to that amount whether due or not. As the effect of the tender was to destroy the right of the defendant to the possession of the boat, it follows that he is entitled to that which accomplished that object. The difference between the sum tendered and that found by the referee as the balance due, is $273.37, and the judgment is too large by this amount. If the plaintiff elects to reduce the amount of the judgment by making that deduction as of the 9th of April, 1860, the judgment may stand, and it should be without costs of this appeal to either party. If not, the judgment must be reversed and a new trial ordered, with costs to abide the event.

[ONONDAGA GENERAL TERM, April 5, 1864. *Morgan, Bacon* and *Foster,* Justices.]