## HARRIS vs. JEX and others.

A tender cannot be made by a mere stranger to the contract, so as to oblige the creditor to accept it.

A mere tender of the mortgage debt, by the owner of the equity of redemption, does not discharge the lien of the mortgage.

Where mortgaged premises are conveyed to a purchaser, subject to the mortgage, but without any assumption of the debt by him, the land is thereby made the primary fund for payment; and the mortgagor becomes a *quasi* surety, and has a right to insist upon the collection of the debt, first, out of the land. Hence the purchaser cannot be permitted to discharge the lien of the mortgage by a mere tender without payment.

The owner of the equity of redemption has the right to redeem land from the lien of the mortgage; but he must redeem by actual payment.

THIS is an appeal by the defendants Jex and wife from a judgment of foreclosure and sale. Two mortgages on the same property are included in the suit. The property covered by them was conveyed by the mortgagors to the defendant, Josiah Jex, "subject to said two mortgages." No defence is interposed by the mortgagors, but their grantee, who did not assume the payment of the mortgages, alone defends. The action was tried at Special Term, before Justice Barnard, who ordered judgment for the plaintiff, and Josiah Jex, the grantee, and his wife, alone appealed. The first mortgage was executed March 1, 1858; the second mortgage was executed March 26, 1861.

The complaint claims that the mortgages are payable in gold coin, and demands judgment accordingly. The answer sets up a conveyance of the land in question by the mortgagors to the defendant, Josiah Jex, and avers that he had tendered the amount due on the mortgages to the plaintiff; that she had refused to receive the same, and that the lien of the mortgages had been thereby discharged.

The trial was in October, 1870, after the first and before the second decision of the United States Supreme Court in the legal tender cases. At that time the General Term in the First District held, that in all gold

contracts the premium on gold should be added, and judgment given in currency. (*Grund* v. *Pendergast*, 58 *Barb*. 216.) Judgment in this case was given accordingly.

The plaintiff has since remitted the premium awarded by the judgment, and now claims only the amount of the mortgages in currency, with interest.

*A. R. Dyett*, for the appellants.

I. The tender was sufficient. (*Knox* v. *Lee; Parker* v. *Davis*, *U. S. Supr. Court, Pamph.*, 1872.)

II. Even if the "legal tender acts" did not affect contracts made before their passage, the tender was sufficient by the case of *Hepburn* v. *Griswold*, because the agreement to extend the time of payment of the mortgages was a new contract under seal, and founded on a valuable consideration, and was made after the passage of those acts.

· III. The effect of the tender was to discharge the lien of the mortgage. (*Kortright* v. *Cady*, 21 *N. Y. Rep*. 343.)

IV. The defendants Jex and wife were therefore entitled to judgment as demanded in their answer. (*Same case.*)

V. The plaintiffs were not entitled to *any* judgment against *any* of the defendants. Not against the Poillons, because they did not defend; and the only judgment asked in the complaint was for a *deficiency* after a sale. (*Code*, § 275.) Not against Jex *personally* for the mortgage debt, because Jex did not assume, and was not personally liable for, the payment of the mortgages. (29 *Barb*. 524. 1 *Duer*, 412. 12 *N. Y. Rep*. 75.)

VI. The decision and judgment both find the amount due in currency, *adding* the gold premium *at that time*. This is erroneous, by all the cases. It should have been

for payment *in gold coin.* (*Hepburn* v. *Griswold*, 8 *Wallace*, 602, *and similar cases.*)

The judge therefore erred in his decision, and the judgment should be reversed and a new trial granted.

### Supplemental Point.

After the decision of the court was rendered and filed, the plaintiff voluntarily served on the attorney of the defendants Jex and wife the stipulation in the case, *waiving payment of the mortgages in gold coin, &c.* The plaintiff thereby admits the judgment to be erroneous and in effect concedes our first and second points (or one of them) well taken, and it follows that our third and fourth points are equally correct. Nothing remains to argue (if anything does) but our fifth point. Conceding, for the purposes of the argument, that the defendant Josiah Jex is personally liable to pay the mortgages, and that the tender relieved him from interest and costs only, the court will not, and cannot, on well settled rules, modify the judgment on this appeal.

1. The complaint contains no allegation that Jex assumed payment of the mortgages, nor any other allegation upon which a judgment against him personally for the payment of the mortgages can be based.

2. No amendment of the complaint was asked for at the trial, nor any such judgment.

3. The plaintiff demanded and elected to take judgment of foreclosure and sale only, and recovered, as she could only, *secundum allegata et probata.*

4. The court on appeal will never amend or "conform the pleadings to the facts proved" (*Code*, § 173,) except for the purpose of *sustaining* the judgment appealed from. Indeed the appellate court never itself allows an amendment nor conforms the pleadings to the facts proved, but treats the amendment or conformation as *having been made* by the *court below.* (11 *N. Y.*

*Rep.* 237. 6 *Duer*, 183. 3 *Abb.* 82. 19 *Barb.* 331. 20 *id.* 67. 24 *id.* 287. 6 *Bosw.* 674. 21 *N. Y. Rep.* 305, 313. 18 *id.* 515.)

Indeed as the proposed amendment in this case would "change substantially the claim" of the plaintiff, the right to make it is not within the power conferred by section 173 of the Code.

*E. P. Wheeler*, for the respondent.

I. Any error in the judgment, arising from the award of the premium on gold, is cured by the remission of this premium by the plaintiff.

II. The alleged tender and refusal did not discharge the lien of the mortgages. *Kortright* v. *Cady*, (21 *N. Y.* 343,) on which the defendant relies, is limited by *Freeman* v. *Auld*, (44 *N. Y.* 50.) This case held that the owner of land who conveyed it by deed which expressed the conveyance to be subject to a mortgage, thereby created a trust fund for the payment of that mortgage, of which the grantee was trustee, and that he held the land for the purpose of paying the nominal amount of the mortgage to the holder of it, quite irrespective of its consideration or validity. In the language of Gray, C., (*p.* 54:) "His position in principle is in no respect different from what it would have been had Allen & Stevens (the mortgagors) counted out in cash the money specified in the mortgage, and placed it in the hands of Buckley (their grantee) as their messenger, with directions to pay it to the mortgagee." It was held in the same case, that the right to enforce this trust passed by an ordinary assignment of the bond and mortgage, and could be set up and enforced in an ordinary foreclosure suit. *Kortright* v. *Cady* is applicable still to the case of a tender by the mortgagor, or by some one who has assumed the mortgage debt, and thus become the primary debtor. But in this case the original mortgagors, who are still liable on their bonds,

have made no tender; nor do they interpose any defence. They have created a trust by this conveyance to Jex, which it is as much their interest as that of the plaintiff to enforce. To adopt the language of Hunt, C., in *Freeman* v. *Auld*, (*p.* 55:) "To allow the defendant to hold these premises," without paying the mortgage, "would be putting into his pocket $7,000 of the plaintiff's money," or the money of Cornelius Poillon, "without a pretence of right. The original mortgagors would lose $7,000," which they had paid to the defendant, "which sum the defendant would unjustly obtain. This result would subject the law to a scandal, to which it is not justly liable." (*See Garnsey* v. *Rogers*, 47 *N. Y.* 233.)

III. The defendant Josiah Jex is not personally liable for the mortgage debt. He has never assumed it. He has, therefore, no right to make a tender, the effect of which would be to discharge a security for the debt, without the debtor's consent.

IV. No refusal by the plaintiff of the tender was proved. Refusal, as well as tender, is necessary to discharge the lien. (*Kortright* v. *Cady*, 21 *N. Y.* 345.) "If, at the appointed day, legal tender of the money was made *and refused*, the condition was satisfied." "Tender *and refusal* upon the law day extinguishes the lien of the mortgage." (*P.* 347.) The defendants put in evidence an admission by the former attorneys for the plaintiff, that a tender had been made to her. This, no doubt, was *prima facie* evidence, till explained. But it does not admit that the plaintiff refused the money, and it was fully explained. The attorney himself was called, and testified that the tender, in point of fact, was made to himself and not to the plaintiff. Ordinarily, no doubt, a tender can be made to an attorney. But where the effect of a refusal of such tender is to discharge the lien of a mortgage, it is clear that there is no implied authority in the attorney to re-

fuse it, and no express authority is proved, and none existed. The case of *Kortright* v. *Cady* should not be extended beyond its terms. It is a decision which, if applied to a case like this, produces grievous injustice. Ordinarily, a tender once made, must be kept good. But that case confessedly carried a strict doctrine of the common law farther than the common law itself. It should not be extended by implication. Where a refusal of a tender has so anomalous an effect, it should be proved that the refusal came from the creditor himself, or his agent, duly authorized—not authorized for some other purpose—but for the express purpose of refusing such a tender. If the debtor wishes to take such an unconscientious advantage, he should be obliged to seek the creditor himself, or to show an express authority to the agent.

*By the Court,* LEARNED, J. This is an action for the foreclosure of two mortgages executed in March, 1858, by the defendant Poillon. The defendant Poillon subsequently conveyed the premises to defendant Jex. The conveyance was expressly subject to the mortgages; but Jex did not personally assume them.

Jex and wife alone defended. The defence proved was that on the 1st day of October, 1870, and before the commencement of the action, the defendant Jex tendered the amount due them in legal tender notes.

Judgment was rendered in favor of the plaintiff adjudging that he was entitled to the amount of the mortgages in gold coin, and directing a sale of the premises to raise enough to pay the gold coin and premium. Subsequently the plaintiff remitted that part of the judgment which gave the premium, and consented to a reduction thereof accordingly.

In the case of *Kortright* v. *Cady*, (21 *N. Y.* 343,) it was held that a tender of the money due on a mortgage discharged the lien; although the tender was not sub-

sequently kept good.  It is plain that this is a some-what harsh principle; and it should not be pressed beyond its strict limits.  It rests upon the familiar doctrine that the bond is the principal, and the mortgage is the collateral.  Now while this is the legal principle, yet in modern times and in the common understanding of men, a contrary view prevails.  It is the security on the land, and not the responsibility of the debtor, to which men look in taking mortgages.  The facility of transferring real estate and mortgages results, frequently, in ignoring the original mortgagor, and treating the lien on the land as the only thing of real value.  To hold, then, that a mere tender, without actual payment, is a discharge of the lien may sometimes operate very unjustly.

It is important, then, to inquire who has the right to make a tender which shall have this very serious effect.  To ascertain this, it may be well to examine the authorities cited in *Kortright* v. *Cady.*

The first is that of *Jackson* v. *Crafts*, (18 *John.* 110.)  In that case the party who made the tender, on its refusal, deposited the money tendered with another person, to be delivered to the mortgagee; so that there was more than a mere tender.  In *Merritt* v. *Lambert*, (7 *Paige*, 344,) the tender was made by the mortgagor; but the chancellor held that the lien was not discharged.  In *Edwards* v. *Farmers' Fire Insurance and Loan Co.*, (21 *Wend.* 467, *and* 26 *id.* 541), the tender was by the mortgagor.  The case of *Arnot* v. *Post*, (6 *Hill*, 65,) in which the tender was made by a purchaser under a sheriff's deed, was reversed in 2 *Denio*, 344.

In the case of *Kortright* v. *Cady* the tender was made by the holder of the equity of redemption.  Whether or not he had assumed a personal liability to pay the debt does not appear.  But the reasoning in that case is throughout based on the right of the *mortgagor* to pay his *debt.*  And the court constantly speak of the

right to make a tender as belonging to the *debtor.* Thus, at page 366, "The mortgagor has the same right after as before a default to pay his *debt* and so clear his estate from incumbrances." "Tender is equivalent to payment as to all things which are incidental and accessorial to the *debt.*"

Now certainly it would not be claimed that a *mere stranger* to the contract could make a tender of the debt to the creditor which would have any validity. And such a tender, that is, a tender made by a mere stranger, if refused, could not have the effect of "payment as to all things which are incidental and accessorial to the debt." It is important to keep this in view; that is, that a tender cannot be made by a mere stranger to the contract, so as to oblige the creditor to accept it.

What right then has the owner of the equity of redemption who has not assumed the debt personally? He has just what the name which designates him implies : the equity of *redemption.* That is, he has the right to *redeem* the land from the lien. But how is the land to be redeemed from the lien of the mortgage? Not, I suppose, by a mere tender which is not kept good, but by actual payment, or by bringing the money into court for the purpose of payment. The mere owner of the equity of redemption owes no debt. It cannot be said in respect to him as it is said in *Kortright* v. *Cady*, at *p.* 366, "The creditor by refusing to accept does not forfeit his right to the very thing tendered, but he does lose all collateral benefits and securities." For the creditor, if he refuses to take the money from the owner of the equity of redemption, cannot recover it from him. It is the redemption of a lien, not the payment of a debt, which his tender is to accomplish. There is no debt, at least from him, and therefore, as it seems to me, his mere tender does not discharge the mortgage lien. He has the right to redeem ; but he must redeem by actual payment.

But there is a further consideration. The equity of redemption was in this case conveyed subject to the payment of the mortgages. The land was thereby made the primary fund for payment. The original debter has become a *quasi* surety, having a right to insist on the enforcement of the debt out of the land. The holder of the equity of redemption cannot even dispute the validity of the mortgage. (*Freeman* v. *Auld,* 44 *N. Y.* 50.) The land, or so much as is necessary is (as it were) appropriated to the payment of the mortgages. If therefore, under such circumstances, the owner of the equity of redemption were permitted to discharge the lien by a mere tender without payment, great injury would be done. For instance, in the present case, Jex took the land subject to the mortgages. It is reasonable to suppose that in so doing he deducted their amount from the value of the land agreed upon. The land then is primarily liable for the debt. That is, Poillon has a right to insist upon the collection of the debt first out of the land. Now if by a mere tender Jex has discharged the lien, then all the rights of the mortgagee seem to have gone. He cannot sue Jex; for Jex never assumed the debt. He cannot enforce the lien; for that, by the supposition, is discharged. He cannot sue Poillon; for by the discharge of the primary fund Poillon, who has become a *quasi* surety, must be released. The result is, that Jex retains the whole of the mortgage for which he has paid nothing, and the mortgagees loses his debt.

Unless the clearest principles of law require it we ought not to work out such injustice.

There is another view of this case.

When the tender was made, the plaintiff refused it, for the reason that it was not made in gold.

At that time, as is well known, by the decision of the highest court in this country, such a contract as that in question was payable in gold. As the law therefore was then declared, the plaintiff was not obliged to ac-

cept the tender which was made. We should be very reluctant to visit on the plaintiff any injurious consequences for following the law as the Supreme Court of the United States had declared it to be.

If that tribunal has since laid down a different principle it would be very unjust in us to require that the plaintiff should have had sufficient foresight to know what the decisions would be in 1872. At the most, parties are only required to know the law as it exists at the time, not as it may be declared afterwards.

.We think, therefore, that the judgment should be affirmed.

Judgment affirmed.

[FIRST DEPARTMENT, GENERAL TERM, at New York, January, 1873. *Ingraham, Brady* and *Learned,* Justices.]