## SUPREME COURT.

### PAM and another agt. VILMAR.

*Consignor and consignee — action between them — " Invoice " defined — tender — remedy at law.*

The fact that a value is stated in an " *invoice* " of merchandise accompanying its shipment, does not, by itself, absolutely indicate that the property was sold and not consigned.

A consignor of merchandise may, before sales by the consignee, revoke the consignment and demand a return of the goods, he offering to pay the charges and expenses of the consignee, and if refused may maintain an action *in equity* for an accounting and return of the goods.

Tender of advances, how made and when sufficient.

The objection to an action in equity, that the plaintiff has an adequate remedy at law, must be taken at the *earliest opportunity.* It comes too late if taken after the evidence upon the merits at the trial is in and the case submitted for decision.

*Special Term, April,* 1876.

*Mr. Loew,* for plaintiff.

*Mr. Wehle,* for defendant.

VAN VORST, *J.* — The evidence establishes, that the merchandise was not sold by the plaintiffs to the defendant, but that the same was consigned to him, to be sold for the plaintiffs.

The fact that a value was placed upon the merchandise and stated in the invoice, does not in itself indicate an absolute sale, but was, in this case, designed as a guide and direction to the defendant as to the amount or sum for which the

merchandise might be sold by him, and which amount he would be expected to realize therefor.

Even to a consignee or agent, the invoice should or might properly state, the price or value of the article (*See Dictionary of "Words and Phrases used in Commerce," by Thomas McElrath, "Invoice"*). As this shipment was a first transaction, and the opening of relations between the parties, the plaintiffs being foreign merchants, it was highly proper that a sum should be stated, as the value of the property.

A true construction of the early correspondence between the parties, indicates a consignment rather than a sale of the property.

It is true that the witness Charles F. Tag, an experienced merchant, pronounces the invoice or memorandum accompanying the shipment to be a bill of goods sold to the defendant. He so interprets the paper. But Philip Bissinger, an importer of merchandise, says that as no terms are mentioned, the paper may indicate either a sale or consignment. Other witnesses, introduced by the plaintiffs, testify that the paper discloses a consignment and not a sale.

But whatever doubt may exist as to the commercial meaning of the paper in question, the parties have, themselves, put a practical construction upon the transaction, and treated it as a consignment and not a sale.

On the 25th February, 1875, one of the plaintiffs, at London, addressed a letter to the defendant in New York, in which it is written as follows: "We have, to-day, sent to Wm. N. Loew, a power of attorney to receive from you, " in natura," the 269 Vienna pounds of human hair, valued at fl. 7,195$\frac{75}{100}$, Austrian currency, consigned to you, *via* Hamburgh, January nineteen, and we respectfully request you to deliver the same to him. Should they have been sold, then we request you to pay to the said gentleman the amount of the consignment, Austrian gulden 7,195.75, and take his receipt therefor," to which letter the defendant, on the 11th day of March, 1875, replied as follows: "Your

peculiar letter of the 25th February I have just received, and I do not comprehend the true meaning of it. Certainly is the hair at your disposal, after paying the expenses incurred by me and my commission, and I am sorry to have had any dealings with a house who forget the rules of a merchant so far as to break up, without any reason, a business connection before the first transaction had been carried out. Telegraph and I will forthwith, upon receipt of my disbursements and expenses, send back the goods to Michelsdorp, from whence I received them."

These letters, it would seem, clearly show the understanding of both parties to be, not that the goods had been sold to the defendant, not that the title had passed to him as a vendee, but rather that the goods had been simply consigned for sale, and that the title still remained in the consignors, and that they had a legal right to revoke the consignment and demand a return of the goods. Subsequently, the party, duly authorized thereto, demanded the goods of the defendant, on the plaintiffs' behalf, a request being made at the same time for a statement of the defendant's charges and expenses, accompanied by an offer to pay them.

The defendant declined either to deliver the goods or render an account of his charges. A tender was then made to the defendant of $1,000 in gold, to cover these charges and expenses, accompanied by an offer to pay any amount of charges in excess of the sum tendered. The tender was refused.

I am of opinion that the plaintiffs, through their agent, did all that equity required of them to secure the redelivery of the merchandise to them, on the assumption that the relation of principal and agent existed between the parties.

Such agency could be terminated by the plaintiffs at their mere pleasure.

The authority, being conferred at the plaintiffs' will, cannot be exercised by the agent when his principal no longer desires his aid (*Story on Agency*, sec. 463).

The defendant could not have been injured, could suffer no loss, as complete indemnity against all his charges and disbursements was tendered.

The defendant, however, claims that the plaintiffs have a remedy at law ample and sufficient, and that they should be confined and limited thereto. But in cases of this character equity does not refuse jurisdiction (*Story's Equity Jurisprudence, sec.* 463).

It is not entirely clear that the plaintiffs have adequate remedy by an action at law. The transaction does involve an examination into the account of the defendant's charges and disbursements, which he declined to render. The property was still in the custom-house, subject to the defendant's order and control. It is questionable whether the plaintiffs could have obtained the same, without possession of the bill of lading in the defendant's possession, or the defendant's express order. The defendant had obtained from the government authorities a permit to land the goods, which gave him the control. But the property was still in the possession of the custom-house authorities when the action was commenced. The transfer of the property and the documents in respect thereto could be restrained by injunction. But I think the objection interposed by the defendant to maintaining this action, raised by his motion on the trial, after evidence on the merits was taken, to dismiss the complaint, comes too late. He thus submitted to the equitable cognizance of this action. The objection should have been taken earlier, at the first opportunity, and " by answer," as is stated in *Truscott* v. *King* (2 *Seld. R.*, 147). As to this point, see, also, *Le Roy* v. *Platt and others* (4 *Paige*, 77); *Cox* agt. *James* (45 *N. Y.*, 558, 562).

The tender was sufficient to entitle the plaintiffs to a return of the goods. The amount appears to have been sufficient to cover all the charges paid and incurred. The duties had not in fact been paid. The plaintiffs could not have obtained the merchandise from the custom-house without paying them,

which would have relieved the defendant from all liability in respect thereto.

But if the $1,000 offered was insufficient, the plaintiffs were willing and clearly expressed their readiness at the time to pay the residue.

The defendant does not set up in his answer a right to detain the goods for any lien thereon, growing out of his charges or otherwise. He claims to be the absolute owner. This is inconsistent with any claim of lien. But the defendant's right to these charges is conceded by the plaintiffs, and they are not discharged by the tender.

In such case, it is not necessary for the plaintiffs to aver or show continued readiness to pay these charges, or to bring the money into court (*Kortright* agt. *Cady*, 21 *N. Y.*, 343).

The claims and charges of the defendant will be ascertained, and ordered to be paid to the defendant, as a condition of the relief to be granted.

There should be judgment for the plaintiffs for an accounting, as prayed for, and for a return of the goods.