## KNUDSON v. FENIMORE et al.

No. 7748—Opinion Filed Feb. 15, 1916.

Rehearing Denied March 7, 1916. Second

Petition for Rehearing Denied

Jan. 8, 1918.

(169 Pac. 478.)

1. **Pleading—Allegation of Agency—Failure to Deny Under Oath—Effect as Admission.**

Under section 4759, Rev. Laws Okla. 1910, a general allegation of authorized agency, will be presumed to be an agency with full powers legally conferred, and the failure to deny such allegation under oath is equivalent to an admission in the answer, and no further proof of the agent's authority is required.

## 2. Mortgages — Tender — Effect to Extinguish Lien.

A tender of a mortgage debt in order to extinguish the mortgage lien must be made by one having the right to make it, and cannot be made by a stranger.

## 3. Same—Sufficiency of Tender.

At the time the tender is made, if not made by the original mortgagor, it must clearly and unequivocally be made known to the tenderee that the tenderer is a person having the legal right to make the tender, and that all the rights of the mortgagor will be protected by an acceptance of the money and the discharge of the mortgage.

(Syllabus by Robberts, C.)

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by Anna Knudson against George O. Fenimore and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

Kroeger & King, Charles West, J. L. Hull, and H. H. Hagan, for plaintiff in error.

Welty & Orr, for defendants in error.

Opinion by ROBBERTS, C. On the 11th day of June, 1909, the defendants G. O. Fenimore and Pearl Fenimore, husband and wife, borrowed of the plaintiff, Anna Knudson, $1,000, and executed and delivered to her their promissory note therefor, due two years after date, at 8 per cent. interest per annum, and to secure the same they executed their mortgage on certain real estate in Oklahoma City, the mortgage providing, among other things, for payment of 10 per cent. attorney's fees if suit should be commenced thereon. At the maturity of the note, June 11, 1909, the interest was paid to date, and the time of payment extended six months at the same rate of interest. At the time the interest was paid, the note and mortgage were in the possession of the American National Bank of Oklahoma City, and the payment of interest and extension of time were made by and through the bank. At the second maturity of the note, which was December 11, 1911, or within a few days thereafter, defendant W. H. Sweatt tendered to C. W. Brooks the sum of $1,040.87, as payment in full of said mortgage, which was refused by Brooks, as he then stated, for the reason that he demanded $100 attorney's fees, in addition to the amount due on the mortgage It appears that the tender covered the full amount due at the time, and the trial court found as a fact that suit had not been commenced at the time the tender was made.

This action was commenced to recover judgment on the note and decree of foreclosure of the mortgage. The petition is the usual form, with exhibits attached, and alleges that the defendants Minetta Sweatt and W. H. Sweatt, husband and wife, claim to have some right or interest in the said premises covered by the mortgage of this plaintiff, but plaintiff states that, whatever said interest may be, the same is junior and inferior and subject to the rights of this plaintiff under said mortgage, and asks that said defendants be summoned to appear and set forth their interest in said property, if any they have, and that such interest, if any, be sold to satisfy the claims of this plaintiff under said mortgage.

Plaintiff prays judgment against all the defendants, for $1,050 and $105 attorney's fees, and for foreclosure of the mortgage. It appears that the petition was filed on the 14th day of December, 1911, and on the 29th day of April, 1913, the defendants Fenimore answered, admitting the execution of the note and mortgage and that there is due on the note the sum of $1,040.87, but deny that they are indebted to the plaintiff in the sum of $1,050.

On the 19th day of May, 1913, the defendants filed their first amended answer as follows: (1) By a general denial, except as to such matters as are admitted; (2) they admit the execution of the note sued on; (3) deny that they are indebted to plaintiff in the sum of $1,050 for principal and interest thereon; and (5) further allege that the defendants were, on the 14th day of December, 1911, indebted upon said note for the principal thereof and interest to the date accrued in the aggregate sum of $1,040.87, and no more: (6) that on the 14th day of December, 1911, defendant W. H. Sweatt tendered to C. W. Brooks, the authorized agent of Anna Knudson, the sum of $1,040.87, which the plaintiff, through her agent, C. W. Brooks, refused to receive; (7) they tender said amount in open court, and ask that the plaintiff have judgment for said sum and no more; (8) they pray that they be not adjudged indebted upon said note and mortgage beyond the sum admitted, and that they have such other and further relief as they may be entitled to in equity. On the 20th day of December, 1913, defendants filed their second amended answer: (1) By general denial, except as to such matters as are admitted; (2) admit the execution of the note and mortgage; (3) deny that they are indebted to plaintiff, in the sum of $1,050 for principal and interest thereon: (4)

admit they were, on or about the 14th day of December, 1911, indebted upon said note for the principal thereof and interest to that time accrued, in the aggregate sum of $1,040.87, and no more; (5) the defendants for their further answer allege that between the 11th and 14th day of December, 1911, the defendant W. H. Sweatt tendered to C. W. Brooks, the authorized agent of Anna Knudson, the sum of $1,040.87, which the plaintiff, through her agent, C. W. Brooks, refused to receive; that in making said tender these defendants did not require of C. W. Brooks, the agent of plaintiff, that he deliver to said defendants the note and mortgage sued on, that he give a receipt for same, or that he do anything except receive the money. Defendants pray that they be not adjudged indebted upon said note and mortgage beyond the sum admitted as herein set forth, and further pray that the plaintiff be denied the right to foreclose said mortgage, but that the said mortgage be ordered canceled and held for naught, and for such other and further relief as the court may deem just and proper.

For reply to defendants' answer, plaintiff admits the correct amount due on the note to be $1,040.87, and prays for judgment and decree as alleged in the petition.

On these issues the case was tried to the court, and judgment rendered against all the defendants for the amount due on the note—foreclosure refused and the mortgage canceled. From this judgment plaintiff appeals to this court.

The first contention of counsel for plaintiff is that C. W. Brooks was not the agent of the plaintiff at the time the tender was made. From the evidence we would be inclined to favor that view of the case, but the answer alleges that he was the authorized agent of the plaintiff, and that allegation is not denied under oath, and therefore must be taken as admitted.

It is a well-settled rule in this state, under section 4759, Rev. Laws 1910, that a general allegation of authorized agency will be presumed to be an agency with full powers legally conferred, and the failure to deny such allegation under oath is equivalent to an admission in the answer, and no further proof of the agent's authority is required. Mitchell v. Knudson Land Co., 19 N. D. 736, 124 N. W. 946; Baird Inv. Co. v. Harris, 209 Fed. 297, 126 C. C. A. 217.

Several other grounds for reversal are presented and earnestly argued by counsel; but, as we look at the case, it will only be nec-

essary to consider one of them, which is that neither the allegations nor the proof show that W. H. Sweatt was authorized to make such a tender as to effect or create a discharge of the mortgage. That instrument was executed by the Fenimores. In their separate answer they expressly admit the execution of the note and do not deny the execution of the mortgage, which is equivalent to an admission. They also admit the sum of $1,040.87 was due thereon, on the 14th day of December, 1911, and pray that they be adjudged to pay that amount. The defendants Fenimore do not admit the authority of W. H. Sweatt to make a tender for them. So far as their separate answer goes, they are the only persons interested in the matter, and all other persons would seem to be interlopers. It is true, the plaintiff's petition alleges that the defendants Sweatt claim to have some interest in the premises covered by the mortgage, and plaintiff prays that they be summoned to appear and make known their interest in said property, if they have any, but in their several answers they fail, neglect, or refuse to state what interest they have in said property, and in fact do not claim that they have any interest therein, either personal, or as the agents of the mortgagors. Even if we admit, as a matter of fact, that Brooks was the agent of the plaintiff, and had perfect right to collect the money, there is no allegation, and no evidence whatever tending to show that he knew, or had any reason to believe, that Sweatt had any interest in the transaction at the time the tender was made either as principal or agent. Counsel for defendants may claim that the answers allege, and therefore show, that the defendants Sweatt admit their liability on the note, or rather for the debt secured by the mortgage, but it must not be overlooked that the first answer was filed by the Fenimores only, 15 months after the petition was filed, and no such confession or statement is found therein. The first admission of the Sweatts as to their liability for the debt is found in the answer of all the defendants on the 19th day of May, 1913, 18 months after tender was made. This is the first intimation or notice that the plaintiff, or her alleged agent, Brooks, had of the fact that the Sweatts made any pretentions of liability for the debt, and the answer in that particular is indefinite, uncertain, and amounts simply to a conclusion, if anything, but certainly nothing more. They admit the defendants are indebted to plaintiff in the sum of $1,040.80, but do not say which defendants—a sort of hit it if it's a deer, and miss it if it's

a calf, admission. There is no reason or equity in the contention that the defendants brought themselves, or the plaintiff, within the harsh rule that a refusal by a creditor of a tender of the amount due on a debt secured by mortgage or other lien operates to relinquish and discharge the lien, when made by the proper person, to the creditor or his agent duly authorized to receive the same.

Leaving out the question of the agency of Brooks, there is nothing in this case that even tends to show that Wm. H. Sweatt brought himself within the rule authorizing him to make this binding tender. The most that can possibly be said is that there is some intimation in the evidence that his wife was some time, for some purpose unknown, the grantee of the Fenimores, but there is nothing to show that the plaintiff. Brooks, knew of that claim at the time the tender was made, nor until it came out in the evidence at the trial more than two years after the tender. The rule as laid down in 2 Jones on Mortgages, § 895 et seq., is that a tender of a mortgage debt, in order to extinguish the mortgage lien, must be made by one having the right to make it, and cannot be made by a stranger, and that "a mere stranger has no right to tender money to discharge an incumbrance on the property, or redeem it." One of the earliest cases in this country, holding that a tender of the money due on a mortgage discharges the lien, is Kortright v. Cady, 21 N. Y. 343, 78 Am. Dec. 145. In a later case the Supreme Court of New York (Harris v. Jex. 66 Barb. [N. Y.] 237), says:

"In the case of Kortright v. Cady, 21 N. Y. 343 (78 Am. Dec. 145) it was held that a tender of the money due on a mortgage discharged the lien, although the tender was not subsequently kept good. It is plain that this is a somewhat harsh principle; and it should not be pressed beyond its strict limits. It rests upon the familiar doctrine that the bond is the principal, and the mortgage is the collateral. Now while this is the legal principle, yet in modern times and in the common understanding of men, a contrary view prevails. It is the security on the land, and not the responsibility of the debtor, to which men look in taking mortgages. The facility of transferring real estate and mortgages results frequently in ignoring the original mortgagor and treating the lien on the land as the only thing of real value. To hold, then, that a mere tender, without actual payment, is a discharge of the lien may sometimes operate very unjustly. It is important, then, to inquire who has the right to make a tender which shall have this very serious effect. To ascertain this, it may be well to examine the authorities cited in Kortright v. Cady. The first is that of Jackson v. Crafts, 18 Johns, [N. Y.] 110. In that case the party who made the tender, on its refusal, deposited the money tendered with another person, to be delivered to the mortgagee, so that there was more than a mere tender. In Merritt v. Lambert, 7 Paige [N. Y.] 344, the tender was made by the mortgagor; but the chancellor held that the lien was not discharged. In Edwards v. Farmers' Fire Insurance & Loan Co., 21 Wend. [N. Y.] 467, and Id., 26 Wend. [N. Y.] 541, the tender was by the mortgagor. The case of Arnot v. Post, 6 Hill [N. Y.] 65, in which the tender was made by a purchaser under a sheriff's deed, was reversed in 2 Denio [N. Y.] 344.. In the case of Kortright v. Cady the tender was made by the holder of the equity of redemption. Whether or not he had assumed a personal liability to pay the debt does not appear. But the reasoning in that case is throughout based on the right of the mortgagor to pay his debt. And the court constantly speaks of the right to make a tender as belonging to the debtor. Thus, at page 366 of 21 N. Y. [78 Am. Dec. 145]. 'The mortgagor has the same right after as before a default to pay his debt and so clear his estate from incumbrances.' 'Tender is equivalent to payment as to things which are incidental and accessorial to the debt.'

"Now certainly it would not be claimed that a mere stranger to the contract could make a tender of the debt to the creditor which would have any validity. And such a tender—that is, a tender made by a mere stranger—if refused, could not have the effect of 'payment as to all things which are incidental and accessorial to the debt.' It is important to keep this in view; that is, that a tender cannot be made by a mere stranger to the contract, so as to oblige the creditor to accept it.

"What right, then, has the owner of the equity of redemption who has not assumed the debt personally? He has just what the name which designates him implies; the equity of redemption. That is, he has the right to redeem the land from the lien. But how is the land to be redeemed from the lien of the mortgage? Not, I suppose, by a mere tender which is not kept good, but by actual payment, or by bringing the money into court for the purpose of payment. The mere owner of the equity of redemption owes no debt. It cannot be said in respect to him, as it is said in Kortright v. Cady, 21 N. Y. at page 366 [78 Am. Dec. 145]: 'The creditor by refusing to accept does not forfeit his right to the very thing tendered, but he does lose all collateral benefits and securities.' For the creditor, if he refuses to take the money from the owner of the equity of redemption, cannot recover it from him. It is the redemption of a lien, not the pay-

ment of a debt, which his tender is to accomplish. There is no debt, at least from him, and therefore, as it seems to me, his mere tender does not discharge the mortgage lien. He has the right to redeem; but he must redeem by actual payment.

"But there is a further consideration. The equity of redemption was, in this case, conveyed subject to the payment of the mortgages. The land was thereby made the primary fund for payment. The original debtor has become a quasi surety, having a right to insist on the enforcement of the debt out of the land. The holder of the equity of redemption cannot even dispute the validity of the mortgage. Freeman v. Auld, 44 N. Y. 50. The land, or so much as is necessary is (as it were) appropriated to the payment of the mortgages. If, therefore, under such circumstances, the owner of the equity of redemption were permitted to discharge the lien by a mere tender without payment, great injury would be done. For instance, in the present case, Jex took the land subject to the mortgages. It is reasonable to suppose that in so doing he deducted their amount from the value of the land agreed upon. The land, then, is primarily liable for the debt. That is, Poillon has a right to insist upon the collection of the debt first out of the land. Now if by a mere tender Jex has discharged the lien, then all the rights of the mortgagee seem to have gone. He cannot sue Jex; for Jex never assumed the debt. He cannot enforce the lien; for that, by the supposition, is discharged. He cannot sue Poillon; for by the discharge of the primary fund Poillon, who has become a quasi surety, must be released. The result is that Jex retains the whole of the mortgage for which he has paid nothing, and the mortgagee loses his debt. Unless the clearest principles of law require it, we ought not to work out such injustice."

We quote this case fully for the purpose of fixing the fact that under this harsh rule the tender must be made by the proper party, and it necessarily follows that if made by an actually authorized party, the tenderee is entitled to know that fact at the time the tender is made; otherwise, how could he possibly, in justice, be bound by the tender? We, therefore, lay this down as a positive rule that at the time the tender is made, if not made by the original mortgagor, it must clearly and unequivocally be made known to the tenderee that the tenderer is a person having the legal right to make the tender, and that all the rights of the mortgagor will be protected by an acceptance of the money and the discharge of the mortgage. In Sinclair v. Learned, 51 Mich. 339, 16 N. W. 674, the Supreme Court of Iowa say:

"The tender proposed to be proved appears to have been made by the plaintiff. The objection to it was that the plaintiff was not in position to make it. He was not the mortgagor or the grantee of the mortgagor, or in any manner, at that time, interested in the equity of redemption. * * * There was no offer to show that the tender was made for, or in the interest or at the request of, the mortgagor. It was therefore made by one who, as between the mortgagor and mortgagee, was a stranger to their dealings, and an intermeddler. Nothing is plainer than that such a person has no right of redemption. If the mortgagee had accepted the money, he could not afterwards have claimed rights under the mortgage: but it is assumed that he refused it, and this he clearly had a right to do."

In the sixth paragraph of the syllabus of McDougald v. Dougherty, 11 Ga. 570, it is said:

"A tender, to be a bar, should be made by the debtor or his legal representative, and not by a stranger."

The opinion of the court fully sustains the doctrine.

In Mahler v. Newbaur et al., 32 Cal. 168, 91 Am. Dec. 571, the headnotes are as follows:

"A party having no interest in the mortgaged premises or in the tender made, has no right to make a tender on his own behalf of the amount due on the mortgage.

"When a tender of the amount due on a mortgage is made by a stranger, and not the party in interest, the creditor must be informed on whose behalf it is made; and, if not so informed, the tender is invalid."

In the body of the opinion they fully and completely sustain the rule herein laid down.

In a very recent case, Brunswick Realty Co. v. University Inv. Co., 43 Utah, 75, 143 Pac. 608, the court says:

"In no event can the appellant insist that, as the purchaser of the equity of redemption, without assuming payment of the debt, it could, by its tender, discharge the premises from the mortgage lien. The appellant was a stranger to the contract between the trust company and the Carpenters, its grantors, and hence the only effect the tender would have would be to stop interest on the debt and to prevent the recovery of costs and attorney's fees."

Hunt on Tender, in section 373, uses the following language:

"A tender by a mere stranger will not discharge the lien of a mortgage. Where mortgaged premises are conveyed to a purchaser subject to a mortgage, but without any assumption of the debt by him, a tender by such owner of the equity of redemp-

tion will not discharge the lien. As between the mortgagor and the purchaser of the legal estate, the mortgage debt is part of the consideration, and the land is the primary fund for the payment of the mortgage debt. Hence a purchaser cannot be permitted to discharge the lien of the mortgage by a mere tender without payment. If he desires to pay the mortgage debt so as to free his land, and the mortgagee refuses the money, he has his remedy in equity to compel a discharge of the mortgage, and, by keeping the tender good and bringing the money into court for the purpose of the payment, he stops the running of interest, and subjects the mortgagee to the costs of the suit. Or in a suit to foreclose he may plead the tender as a defense and bring the money into court with like effect."

In Grafflin et al. v. State et al., 103 Md. 171, 63 Atl. 373, 7 Ann. Cas. 1061, one of the headnotes is as follows:

"In order to extinguish the lien of a mortgage by a tender of the amount due at maturity and its refusal by the mortgagee, the tender must be made by a person who has a right to pay the debt; such as the debtor himself, or the holder of the title to the property mortgaged, or the holder of some subsequent lien having an equity of redemption. The tender of the debt by a stranger does not extinguish the lien of the mortgage."

In the body of the case the court states its reasons for so holding in the following language:

"In the first place the plea does not aver that the guaranty company was the owner of the equity of redemption in the mortgaged property, or that the company occupied any other relation to the property or the liens upon it that would entitle it to tender to the holder of the first mortgage the amount due thereon. The plea sets up simply the fact that the guaranty company, a mere stranger, tendered to the holder of the first mortgage the amount due thereon, whereby upon the holder's refusal to accept payment, the lien of the first mortgage was extinguished and the second mortgage thereupon became the first mortgage. It may be conceded that if there is a tender of the mortgage money at the time and in the manner prescribed in the condition of the mortgage, and the mortgagee refuses to receive it, the condition is complied with and the mortgagee must lose his security upon the land, which was merely collateral to the debt, although the mortgagor may be still liable for the money. Merritt v. Lambert, 7 Paige (N. Y.) 344; 28 Am. & Eng. Encyl. L. 13. But to produce such a result the money really due must be tendered by a person having a right to make the tender, because a valid tender can only be made by the person, or the agent of the person, who

has a right to pay the debt; as the debtor himself or his representatives, or the holder of the title to the estate or property on which the debt is a lien, or the holder of some subsequent lien having an equity of redemption—a tender by a stranger is not good. 28 Am. & Eng. Encyl. L. 34.'"

From the foregoing it must be apparent that no such tender was made as would effect a discharge of the mortgage lien.

By their answer the defendants confessed the amount of $1,040.87 to be due on the note on the 14th day of December, 1911. That admission should be accepted by the court as the true amount due at that time, and was the amount for which judgment and decree of foreclosure should have been rendered, and the court committed error in not so doing. The judgment of the trial court should therefore be reversed and remanded to the district court of Oklahoma county, with directions to that court to set aside its judgment therein and enter judgment against the defendants for the sum of $1,040.87, with interest thereon at 8 per cent. from the 19th day of May, 1913, and further decreeing said mortgage to be a prior lien on the property involved, and that the same be foreclosed and the property ordered sold, as provided by law, for the payment of said indebtedness, and that said court, in the exercise of its equitable jurisdiction, disallow the claims of plaintiff for attorney's fees.

By the Court: It is so ordered.