## SCROGGINS FARMS CO. v. COMMODITY CREDIT CORPORATION.

### Civ. No. 714.

District Court, E. D. Arkansas, W. D.

April 20, 1945.

Coleman, Mana, McCulloch & Goodwin and R. B. McCulloch, all of Little Rock, Ark., for plaintiff.

Sam Rorex, U. S. Atty., and Warren E. Wood, Asst. U. S. Atty., both of Little Rock, Ark. (Dan P. Chisholm, Regional Counsel, Department of Agriculture, of Little Rock, Ark., of counsel), for defendant.

TRIMBLE, District Judge.

This action was commenced in the Pulaski County Chancery Court, by Scroggins Farms Company, an Arkansas corporation, and is here by removal. The defendant corporation was organized in Delaware pursuant to certain acts of Congress, for the purpose of stabilizing prices on farm products, including cotton.

Pursuant to the provisions of the acts of Congress, and rules and regulations promulgated by authority thereof, certain producers of cotton stored in authorized warehouses cotton produced during the 1938 crop season. Using the warehouse receipts as collateral, they borrowed from

various banks throughout the State of Arkansas, the full amount of the loan value on this cotton, which loan value had been fixed by the Agricultural Adjustment Administration. In due course of the business for which it was created, the Commodity Credit Corporation became the owner of said notes and all the rights thereunder, including the collateral security of the warehouse receipts, but without recourse upon either the producers or intermediate assignors for any deficiency.

The notes were executed upon forms provided by the Commodity Credit Corporation, called a "Cotton Producer's Note," and were in ordinary form, so far as the face of the note is concerned. These notes recited that it was secured by the pledge of warehouse receipts representing so many bales of cotton and showing the aggregate weight. On the same paper, and a part of the same document, there was a "Loan Agreement", which, among other things, provided: "5. * * * The undersigned producer shall be and remain liable to the holder for any deficiency only in the event that the loan was obtained through fraudulent representations by the producer." This is also the provision of the statute. 7 U.S.C.A. § 1302(h).

The plaintiff, acting through Mr. O. O. Scroggins, purchased from the producers of cotton involved here, whatever right, title or interest they had in the cotton evidenced by the warehouse receipts, "subject to the lien of a cotton producer's note." Most of these purchases were evidenced by assignment on forms other than official, and were, so far as is pertinent here, substantially as follows: "For value received, I hereby sell, transfer, and assign to you all of my right, title and interest in and to —————— bales of cotton now owned by me, subject only to the lien of a cotton producer's note, executed by me on the ——— day of ————, 1938, in the amount of ————— dollars, it being understood that you are expressly not assuming any obligations for the payment of such note or the performance of any of its terms and conditions."

Mr. O. O. Scroggins, who was the agent for the plaintiff and the only witness in its behalf, testified that plaintiff paid an average of twenty-five to fifty cents a bale for these assignments; that the most it paid was $3.50 a bale, and that to tenants on plaintiff's own farms, "because I

thought it would be of benefit to the farms."

On April 3, 1940, the defendant Commodity gave what it terms a press release, or information for the press, to the newspapers, announcing the extension of the loans on 1938 cotton producers' notes, to July 31, 1941. This press release also contained the following language: "It was also announced by the Commodity Credit Corporation that after July 31, 1940, no request for the release of loan cotton to any person other than the producer will be accepted unless the request is submitted to the Corporation or its agent, on a standard form to be printed and provided by the Corporation, within fifteen days after it has been executed by the producer."

This was in accordance with a so-called directive of the Commodity, and the standard form required, when later furnished, was known as "Form R."

Mr. Scroggins, who was at all times acting either for himself and/or as agent for the plaintiff, admitted that he had seen and read this press release, had notice of it immediately after its publication, and was familiar with the requirement with respect to assignments. Thereafter he secured some of the standard forms, secured their execution by some of the producers, but many of the assignments were not on these official forms.

On or about May 15, 1941, Mr. Scroggins, acting for the plaintiff, according to his testimony presented all these assignments to the Commodity through its fiscal agent at the Federal Reserve Bank, at Little Rock, Arkansas, made a tender of all sums of money and charges due thereon, and demanded the delivery to him of the warehouse receipts pledged to secure the payment of the notes. While the presentation on this date was denied by the officials of the Federal Reserve Bank, a subsequent check shows that some of them were presented on that date, and bore the stamp showing receipt. Such as were tendered at that time were refused for reasons hereinafter stated. On July 25–26, 1941, Mr. Scroggins again presented to the Commodity, through the same fiscal agent, the assignments involved herein, they were there stamped as having been received, the tender refused and the assignments with the accompanying papers were returned to the plaintiff.

Included in the assignments presented were many for cotton which had theretofore been released to the producers themselves, or to other assignees, without notice of any claim by plaintiff. Also included were assignments invalid for reasons other than those assigned by defendant for refusing the tender, and plaintiff has by agreement or stipulation eliminated those from this action. By agreement of counsel there is now involved 286 bales of cotton, 136 bales on non-official forms and 150 on official forms, the latter hereinafter referred to as being on Form R.

The grounds for refusal of the tender, alleged by the defendant, are:

1. The cotton involved in this case was pledged to the defendant as security for mandatory, non-recourse loans, as · prescribed by Section 302 of the Agricultural Adjustment Act of 1938, 7 U.S.C.A. § 1302. The act provided for loans on cotton to the producers thereof only. Under the act and loan documents, the defendant was not required to recognize any assignment by the producer of his interest in the cotton pledged to the defendant.

2. On April 3, 1940, at the time the loan maturity date was extended to July 31, 1941, it was announced by the defendant to all interested parties, and they were notified, including the plaintiff here, that beginning August 1, 1940, the defendant would recognize only such assignments by borrowing producers as were made in accordance with an official form of assignment to be prescribed by the defendant, and which was to be presented within fifteen days after the execution thereof; that none of the assignments presented by plaintiff were on this official form, and, the plaintiff, did not attempt to redeem the cotton prior to August 1, 1940.

Upon the trial of this cause it developed that some of the assignments tendered were on official forms, and the defendant now contends that these not having been presented within fifteen days after their execution, defendant was not required to recognize them.

The relief prayed in the original complaint was that the defendant be enjoined from disposing of the warehouse receipts for cotton covered by plaintiff's assignments; for delivery of the cotton, "upon payment by the plaintiff of the loan on said cotton, together with all interest and charges thereon," and for judgment· for the value of plaintiff's cotton sold, assigned or delivered by defendant to parties other than plaintiff after demand was made by plaintiff for delivery thereof. After removal of the cause to this court, plaintiff filed an amendment, in which it prayed; "Upon final determination, of this cause, defendant be required to deliver to the plaintiff," the cotton listed, together with warehouse receipts therefor, upon payment by the plaintiff of the, loan on the cotton, together with all interest and charges accrued thereon, and for judgment for the value of plaintiff's cotton which was disposed of otherwise than by delivery to the plaintiff after tender and demand.

■ In the case of Harris v. Commodity Credit Corporation, decided by this court on November 30, 1942, and reported in, D.C., 47 F.Supp. 681, this court held that Commodity Credit Corporation could not unilaterally change the terms of its loan agreements, and thereby prejudice the rights of the plaintiff in that action, and that the plaintiff there was entitled to judgment for delivery of the cotton upon payment of the charges against it. This case, being upon all fours with that upon that issue, will be controlled by the decision in that case, and the court now holds that upon tender by the plaintiff of the amount of the loan and carrying charges against the cotton, the plaintiff here was entitled to the delivery of the warehouse receipts for the 286 bales of cotton described above.

What then is the measure of plaintiff's recovery?

Plaintiff in its brief succinctly states its position as follows:

"Plaintiff contends that it is entitled to recover the value of the cotton at the time of the conversion without any deduction of the amount of the loan, interest and carrying charges which were due Commodity." And, in common parlance, the defendant can whistle for its money.

In support of this contention it relies on the case of Mitchell v. Roberts, 8 Cir., 17 F. 776, decided by the late Judge Caldwell, while Circuit Judge of the Eastern District of Arkansas. That case held (quoting from the syllabus): "A tender of the debt after its maturity extinguishes the lien on personal property pledged to secure its payment, and the pledgor may recover the pledge or its value in any proper form of action, without keeping the tender good or bringing the money

into court, and the pledgee may have his action for the debt."

The case of Mitchell v. Roberts, supra, is not in point in the case at bar. There the thing pledged was not treated as primarily liable for the payment of the debt, while in the instant case the thing pledged was not only primarily but solely liable for such debt. There can be no recourse for the debt against the producer, for both the statute and the loan agreement provide that there shall be no liability on his part, and he, in effect, negotiated this loan without recourse on him, except upon a condition that does not arise here. Nor can the pledgee, if it lose the lien against the thing pledged, proceed against the plaintiff for the debt, for under the terms of the assignments it took without recourse. Hence if the Commodity cannot enforce its lien against the thing pledged, it not only loses its lien but also its debt, for there is no one against whom it can proceed for collection.

Giving to the language of the assignments its greatest probative effect in favor of the plaintiff, and taking into consideration all of the evidence before the court, what the plaintiff here purchased from the producers, and all it purchased was all the producers had, the equity of redemption, the right to pay the charges and receive from the defendant the warehouse receipts for the cotton.

In the case of Knudson v. Fenimore, 69 Okl. 3, 169 P. 478, 480, L.R.A.1918C, 181, 183, the Supreme Court of Oklahoma said: "There is no reason or equity in the contention that the defendants brought themselves, * * * within the harsh rule that a refusal by a creditor of a tender of the amount due on a debt secured by a mortgage or other lien operates to relinquish and discharge the lien, when made by the proper person * * *."

It would, indeed, be a harsh rule if enforced in this case. The fact is the plaintiff speculated upon the possibility that the market value of the cotton at some future date would exceed the loan and charges against it and that from this equity of redemption which he was purchasing, he might realize a profit over and above the small sums which he paid for this equity of redemption. To permit him now, through the happening of a fortuitous event, the refusal of the tender by an agent of the defendant upon a misunderstanding of the law, to increase the interest which he had in this collateral, from a mere equity of redemption, which he purchased, to an outright ownership of the thing pledged, for which he paid nothing, free and clear of the lien of the pledge, would not only be enforcing a harsh rule, but one against reason and equity, and one which the court would be most unwilling to enforce, "unless the clearest principles of law require it."

However, we think the plaintiff mistakes the principles of law upon which this controversy turns, and which control, as to the amount it is entitled to recover.

In the case of Knudson v. Fenimore, supra, the court had before it the effect of a tender upon the lien of a mortgage, and as to who has the right to make a tender, such as would discharge the property from the lien of the mortgage. In the opinion, the court quotes extensively from the case of Harris v. Jex, 66 Barb. 232, 237, where the Supreme Court of New York, which had theretofore decided the case of Kortright v. Cady, 21 N.Y. 343, 78 Am.Dec. 145, said:

"In the case of Kortright v. Cady [supra], it was held that a tender of the money due on a mortgage discharged the lien, although the tender was not subsequently kept good. It is plain that this is a somewhat harsh principle; and it should not be pressed beyond its strict limits. It rests upon the familiar doctrine that the bond is the principal, and the mortgage is the collateral. Now while this is the legal principle, yet in modern times and in the common understanding of men, a contrary view prevails. It is the security on the land, and not the responsibility of the debtor, to which men look in taking mortgages. The facility of transferring real estate and mortgages results, frequently, in ignoring the original mortgagor, and treating the lien on the land as the only thing of real value. To hold, then, that a mere tender, without actual payment, is a discharge of the lien, may sometimes operate very unjustly. It is important, then, to inquire who has the right to make a tender which shall have this very serious effect. To ascertain this, it may be well to examine the authorities cited in Kortright v. Cady. * * *

"Now certainly it would not be claimed that a mere stranger to the contract could make a tender of the debt to the creditor which would have any validity. And such

a tender, that is, a tender made by a mere stranger, if refused, could not have the effect of 'payment as to all things which are incidental and accessorial to the debt.' It is important to keep this in view; that is, that a tender cannot be made by a mere stranger to the contract, so as to oblige the creditor to accept it.

"What right then has the owner of the equity of redemption who has not assumed the debt personally? He has just what the name which designates him implies: the equity of redemption. That is, he has the right to redeem the land from the lien. But how is the land to be redeemed from the lien of the mortgage? Not, I suppose, by a mere tender which is not kept good, but by actual payment, or by bringing the money into court for the purpose of payment. The mere owner of the equity of redemption owes no debt. It cannot be said, in respect to him as it is said in Kortright v. Cady [supra], 'The creditor by refusing to accept does not forfeit his right to the very thing tendered, but he does lose all collateral benefits and securities.' For the creditor, if he refuses to take the money from the owner of the equity of redemption, cannot recover it from him. It is the redemption of a lien, not the payment of a debt, which his tender is to accomplish. There is no debt, at least from him, and therefore, as it seems to me, his mere tender does not discharge the mortgage lien. He has the right to redeem; but he must redeem by actual payment.

"But there is a further consideration. The equity of redemption was in this case conveyed subject to the payment of the mortgages. The land was thereby made the primary fund for payment. The original debter has become a quasi surety, having a right to insist on the enforcement of the debt out of the land. The holder of the equity of redemption cannot even dispute the validity of the mortgage. (Freeman v. Auld, 44 N.Y. 50.) The land or so much as is necessary, is (as it were) appropriated to the payment of the mortgages. If therefore under such circumstances, the owner of the equity of redemption were permitted to discharge the lien by a mere tender without payment, great injury would be done. For instance, in the present case, Jex took the land subject to the mortgages. It is reasonable to suppose that in so doing he deducted their amount from the value of the land agreed upon. The land then is primarily liable for the debt. That is, Poillon has a right to insist upon the collection of the debt first out of the land. Now if by a mere tender Jex has discharged the lien, then all rights of the mortgagee seem to have gone. He cannot sue Jex, for Jex never assumed the debt. He cannot enforce the lien, for that, by the supposition, is discharged. He cannot sue Poillon; for by the discharge of the primary fund Poillon, who had become a quasi surety, must be released. The result is, that Jex retains the whole of the mortgage for which he has paid nothing, and the mortgagee loses his debt. Unless the clearest principles of law require it we ought not to work out such injustice." See also 93 A.L.R. 60, 61.

Was the plaintiff here, who was a stranger to the pledge contract, a mere speculative purchaser of the equity of redemption, who had paid nothing for the lien on the cotton, one who could make such a tender as would discharge the lien of the pledge, and take from the pledgor, the Commodity, not only its lien upon the thing pledged, but its debt as well? We think not. In the case of Knudson v. Fenimore, supra, the court quoted with approval from Hunt on Tender, Sec. 373, as follows: "A tender by a mere stranger will not discharge the lien of a mortgage. Where mortgaged premises are conveyed to a purchaser subject to a mortgage, but without any assumption of the debt by him, a tender by such owner of the equity of redemption will not discharge the lien. As between the mortgagor and the purchaser of the legal estate, the mortgage debt is part of the consideration, and the land is the primary fund for the payment of the mortgage debt. Hence a purchaser cannot be permitted to discharge the lien of the mortgage by a mere tender without payment. If he desires to pay the mortgage debt so as to free his land, and the mortgagee refuses the money, he has his remedy in equity to compel a discharge of the mortgage, and, by keeping the tender good and bringing the money into court for the purpose of the payment, he stops the running of the interest, and subjects the mortgagee to the costs of the suit. Or in a suit to foreclose he may plead the tender as a defense and bring the money into court with like effect."

In the instant case the plaintiff purchased the right to redeem, but did

124

not purchase the whole corpus, including lien and debt. While there is language in some of the cases which might lead to the conclusion that some courts have held to a different theory, and that the plaintiff here would not be a stranger, but is one that could make the tender such as it claims, a consideration of those cases shows a different state of facts from that in the case before the court. Aside from that, where there is a conflict in the authorities, from courts whose decisions are merely persuasive and not controlling, the court should and must select that holding which comports with equity, good conscience and sound judgment. The parties have not brought to the attention of the court, nor has the court in its independent research found any case decided by the Arkansas Supreme Court, bearing directly on this question, and so far as has come to the notice of the court the statutes of Arkansas are silent upon this issue.

It is the theory of the defendant, that, if it is liable in this case at all, it is liable as for conversion of the plaintiff's equity of redemption in the cotton, and the amount to which plaintiff would be entitled to judgment would be the market value of the cotton on the date of the conversion, the date of tender, less the amount of the loan and carrying charges due to the Commodity.

█ In the case of Franklin v. Spratt, 174 Ark. 268, 295 S.W. 26, the Supreme Court of Arkansas said (quoting from the syllabus): "The rule of damages applicable to an unlawful conversion of personal property is that, if the defendant has equitable interest in the property, recovery against him is limited to the actual net amount of the plaintiff's interest, although the possession is wrongfully assumed or retained." This is the well settled rule in the State of Arkansas. Meyer Bros. Drug Co. v. Matthews, 69 Ark. 483, 64 S.W. 264; Hamburg Bank v. George, 92 Ark. 472, 123 S.W. 654; Schutt v. Arkansas Rice Growers Agricultural Credit Corporation, 183 Ark. 972, 39 S.W.2d 517; Barham v. Standridge, 201 Ark. 1143, 148 S.W.2d 648; Patton v. Alexander, 202 Ark. 883, 154 S.W.2d 1.

█ The plaintiff is entitled to judgment for the value of its equity of redemption, that is, for the market value of the cotton on the date of tender, less the loan, interest and carrying charges due the Commodity on that date.

Doubtless the parties can stipulate as to the market price of cotton, amounts of loans and carrying charges, and net amount due plaintiff. Counsel, will, therefore, prepare findings of fact, conclusions of law and praecipe for judgment in accordance with this memorandum.