CAPITAL VIEW REALTY COMPANY, a corporation, Appellant,

v.

Michael COHEN, Appellee.

No. 1824.

Municipal Court of Appeals for the District of Columbia.

Argued June 25, 1956.

Decided July 30, 1956.

which division the salesman shall receive fifty per cent (50%), and the broker shall receive the balance. In the event of special arrangements with any client, or property of the broker is listed, a special rate of commission may apply, such rate to be agreed upon by the broker and the salesman. * * *"

In December 1952 Gemce, Inc., a Maryland corporation engaged in developing and selling certain land situated in Prince Georges County, Maryland, decided to liquidate and dissolve.[1] Accordingly, it entered into a sales agency contract with defendant corporation which provided that defendant corporation was to be the sole and exclusive sales agent for any and all of Gemce's unsold real estate·in the Berkshire Subdivision, Prince Georges County, Maryland. The contract further provided that:

"For its services under this contract, Capital View Realty Company is to be paid, by the said trustees, sales commissions equal to Ten ·per cent (10%) of the gross amount of all sales contracts made, said commissions to be paid out of the first payments to or receipts by the said trustees thereon."

A meeting of the board of directors of defendant corporation was held on March 20, 1953, at which time

"* * * it was resolved, upon motion duly made, seconded and passed that in connection with five per cent of the commission to be received by the company from the Trustees representing the shareholders of Gemce, Inc., under the sales agency contract dated December 18, 1952 one half will be credited to Col. Julius Goldstein and one half credited to Mr. Raymond D. Evans as commission."

Herman Miller, Washington, D. C., for appellant.

Raymond E. Gable, Washington D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

This was a suit to recover the balance allegedly due on a real estate sale commission. Trial by the court resulted in a finding and judgment for plaintiff for $2,500. Capital View Realty Company, hereinafter referred to as defendant corporation, appeals.

The evidence disclosed that in March 1945 defendant corporation, through its vice president, entered into a written contract with plaintiff Cohen which provided in part as follows:

"* * * When the salesman shall perform any service hereunder, whereby a commission is earned, said commission shall, when collected, be divided between broker and salesman, in

[1] Title to all assets of Gemce, Inc., was transferred to Bernard J. Hayden and Herman Miller as trustees.

In March 1954 plaintiff procured a contract for the sale of about 184 acres in the Berkshire Subdivision whereby one Shapiro agreed to purchase said acreage from the trustees of Gemce, Inc., for $100,000. This contract provided that "the seller [Gemce trustees] agrees to pay to Capital View Realty Company, his Agent, a commission of Five percent of the selling price * * *." Shapiro made a deposit of $2,000 with defendant corporation in accordance with the sales contract and subsequently the Gemce trustees paid defendant corporation $8,000 by check. On the reverse side of the trustees' check there was the notation "Com. on Shapiro Sale." Defendant corporation then paid plaintiff $2,500 as his commission on the sale.

Plaintiff testified that he was not a member of the board of directors of defendant corporation; that he was not present at the meeting of said board on March 20, 1953, and that he did not participate in the formulation or adoption of any of its resolutions. He also testified that he did not agree to any change or alteration in the March 1945 agreement with regard to his commission but relied upon it at all times. On cross-examination it was elicited that plaintiff was a Gemce stockholder and that he had signed the aforementioned sales agency contract of December 18, 1952, which provided for a ten percent commission to defendant corporation. However, he testified that although he signed it, he did not remember the amount of defendant corporation's commission but assumed it was five percent until he learned to the contrary about two months after the Shapiro sale. He also stated on cross-examination that he had sold Gemce houses "and in each of those cases * * * got two and a half percent of the commission" and that he "never made a demand for any commission in excess of the two and a half percent on any of those sales."

Julius Goldstein testified on behalf of defendant corporation that he had been its vice president from 1947 to 1952; that he helped form a corporation (Gemce, Inc.) to purchase the ground known as Berkshire; and that since Raymond D. Evans and he received nothing for their promotional efforts, the stockholders agreed [2] to their participation in the liquidation as compensation for this service. Defendant corporation's present vice president and sales manager testified that there was a five percent commission on the sale of houses in Berkshire, two and one-half percent for Capital View and two and one-half percent for the salesman. He likewise testified that defendant corporation received a five percent net commission on the Shapiro transaction.

The court found as a fact that (1) plaintiff was not a member of the board of directors of defendant corporation and did not participate in the formulation of the resolution dated March 20, 1953; (2) $10,000 was paid to defendant corporation by the trustees of Gemce, Inc., as commission on the Shapiro sale; and (3) the contract entered into between plaintiff and defendant corporation in March 1945 had not been canceled by the parties thereto. It concluded as a matter of law that (1) plaintiff was not bound by the provisions of the resolution of the board of directors dated March 20, 1953; (2) the contract entered into between plaintiff and defendant corporation in March 1945 was valid and subsisting in March 1954 when the agreement between Shapiro and the Gemce trustees was executed; and (3) by the terms of the contract of March 1945, plaintiff was entitled to one-half of the commission received by defendant corporation for the sale of "Berkshire Subdivision."

It is contended by defendant corporation that there was a "comprehensive understanding" between Gemce and its stockholders that upon liquidation, its original

2. There is no evidence that this was a written agreement.

promoters would each receive a two and one-half percent commission on any sales made in liquidation, and that this special agreement was entered into after the date of the sales agency contract with defendant corporation. It also argues that plaintiff's acceptance of the two and one-half percent commission on the sale of houses in the subdivision prior to and after liquidation established a course of conduct which constituted a modification of his original contract. It further contends that plaintiff was bound by the contract of purchase in March 1954 which provided that the liquidating trustees were to pay defendant corporation five percent commission on the sale.

Plaintiff argues that defendant corporation was paid a commission of $10,000 on the Shapiro sale; that this was evidenced by the deposit of $2,000 and the check for $8,000 from the liquidating trustees. He also contends that there was nothing in the sales agency contract of December 18, 1952, which referred to any commission to the promoters for their efforts; that the only evidence to that effect was the resolution of the board of directors dated March 20, 1953, by which he was not bound since he was not a member of the board, was not present at the meeting, and did not participate in the adoption of the resolution. He further argues that he did not agree to any modification of his original contract by a course of conduct or otherwise.

From the foregoing it is apparent that the questions presented to this court for review are purely factual. There was conflicting evidence with regard to the amount of commission paid to defendant corporation on the Shapiro sale. There was evidence that $10,000 had been paid to defendant corporation, $8,000 of which was by check from the trustees, bearing the notation "Com. on Shapiro Sale." In opposition to this, defendant corporation offered testimony through one of the promoters

that an explanation of this ten percent commission had been given the Gemce stockholders. However, the promoter could not say whether plaintiff had been informed of this understanding, which allegedly allowed the trustees to pay the promotors five percent for their efforts. In fact the record reflects merely a presumption on his part that plaintiff had been so informed. The only evidence that the promoters were to receive a commission was the resolution of the board of directors. However, there was testimony plaintiff had no knowledge of this resolution. There was testimony that salesmen received a two and one-half percent commission on the sale of houses in the Berkshire Subdivision, but it is not clear whether this was one-half of the commission received by defendant corporation. In any event, with regard to the Shapiro sale, the trustees' check bore the notation that it was for commission. There was no distinction made between real estate commission and promotional fee.

We have set forth enough of the testimony and argument to show that the case was mainly factual. Whether $10,000 had been paid as commission or commission and promotional fee and whether there had been a modification of the original contract, were questions for the trial judge to decide.[3] We are controlled, therefore by the following language of Nolan v. Werth, 79 U.S.App.D.C. 33, 142 F.2d 9:

"* * * the evidence was such that either one of two different conclusions might reasonably have been drawn from it, and in such a case we have said time and again the decision is for the trial court; that its judgment must stand and that the appellate court may not reweigh the evidence or override the findings, except where it clearly appears they are manifestly wrong. In the case we have here it is enough to say, as the Supreme Court

3. Sigler v. Callan, D.C.Mun.App., 121 A.2d 268.

said in Lawson v. United States Mining Co., 207 U.S. 1–12, 28 S.Ct. 15, 52 L.Ed 65, that if the testimony is not sufficient to show that the trial court's decision is necessarily right, it wholly fails to show that it is necessarily wrong, * * *."[4]

Affirmed.

4.   See also Weimann v. Sheppard, D.C.Mun.App., 37 A.2d 847.