**Samuel BLANKEN et al., Appellants,**

**v.**

**HARRIS, UPHAM & CO., INCORPORATED, Appellee.**

**HARRIS, UPHAM & CO., INCORPORATED, Appellant,**

**v.**

**Samuel BLANKEN et al., Appellees.**

**Nos. 9392, 9416.**

District of Columbia Court of Appeals.

Argued Dec. 9, 1975.

Decided June 30, 1976.

Rehearing and Rehearing en Banc Denied Aug. 27, 1976.

---

3. Pub.L.No.93–100, § 7, 87 Stat. 342, ¶ 7(c).

Jules Fink, Silver Springs, Md., with whom Isadore B. Katz, Silver Springs, Md., was on the brief, for appellants in No. 9392 and appellees in No. 9416.

Robert N. Kharasch, Washington, D. C., with whom Rosemary Boyd Avery, Wash-

ington, D. C., was on the brief, for appellee in No. 9392 and appellant in No. 9416.

Before GALLAGHER and MACK, Associate Judges, and PAIR, Associate Judge, Retired.

PER CURIAM:

In this dispute arising between stock investors and a brokerage firm, both parties appeal from the judgment of the trial court ordering a dismissal of a claim and a counterclaim for damages and for money due and owing as a result of two stock transactions, and from the order of the court denying requests for a new trial. We find that the trial court properly held that the plaintiffs-appellants, the Blankens, had failed to sustain the burden of proving their claim for damages for conversion and we therefore affirm as to this claim. As to the counterclaim of the defendant-cross-appellant, Harris, Upham & Co., we conclude that the findings of the trial court are insufficient to show the basis for dismissal and we reverse and remand this cause for further findings.

At a time when Harris, Upham was holding (in the normal course of business) three hundred shares of Federal National Mortgage Association (FNMA) stock belonging to the Blankens, a dispute arose between the corporation and the Blankens with respect to another transaction. The controversy began when the brokerage firm purchased two hundred shares of Union Corporation (Union) stock on February 9, 1972 at the market price of $24.75. Although Mr. Blanken admitted that he had ordered two hundred Union shares by telephone from the firm's representative on that date, Blanken denied that the purchase was made in accord with his instructions. He claimed instead that he had ordered the purchase at a fixed price of $24.50 and that on the same day, when informed of the purchase at market price, he informed the representative that the buying had been contrary to his instructions and that he did

not want the stock. On the other hand the corporation's representative claimed that Blanken had ordered the Union stock at market price and had impliedly approved the purchase on those terms.

When Blanken left the city without making payment subject to cash and did not communicate with the firm by the settlement date (February 16th),[1] the company's representative extended the time for payment until March 3rd. On that date when still no communication had been received from Blanken (despite the firm's warning to Blanken by telegram), the stock was sold at the market price of 15⅛ per share at a loss of $2069.78 and Blanken's account (including his FNMA security) was transferred from a cash one to a margin one.[2]

Thereafter Harris, Upham made demands upon Blanken for the Union stock loss, and Blanken made demands upon Harris, Upham for the delivery of his FNMA stock. Blanken was told that his account could not be closed until the Union loss was satisfied, that he was free meanwhile to sell the FNMA stock and purchase other stock with the proceeds, but that the proceeds would not be released to him.

The Blankens brought suit in May 1972 seeking replevin, money due and owing, and damages for conversion. Harris, Upham, offering to lodge the FNMA stock with the court, counterclaimed for money due and owing on the Union stock purchase. On August 18, 1972, the court ordered the FNMA stock returned to Blanken. The court heard the case in November, ordered Harris, Upham to pay the Blankens a balance of $112.44 remaining in their account, and rendered the dismissals which are the subject of this appeal.

The trial court properly concluded that the Blankens had failed to establish an act on the part of Harris, Upham which would entitle the Blankens to compensatory or punitive damages in connection with the FNMA stock.

■ In order for there to be a conversion there must be an unlawful exercise of ownership, dominion and control over the personalty of another in denial or repudiation of his right to such property. *See Shea v. Fridley*, D.C.Mun.App., 123 A.2d 358 (1956). Or, as the Second Restatement of Torts sets out:

> Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.[3]

■ In the instant case, the evidence showed that the FNMA shares, while held in a street name, were listed to Blanken; that the Blankens received all dividends; and that they were notified that the firm would honor any order for the sale of the stock and purchase of other security with the proceeds. At trial the firm's Vice President testified, and the court found, that at no time did the corporation assert ownership over the shares. These circumstances do not support the control necessary to a finding of conversion but even if

---

1. The stock in question, Union Corporation (N.Y.S.E.), was bought for a special cash account on February 9, 1972. Section 4(c) (2) of Regulation T, 12 C.F.R. § 220.4(c) (2) (1976), states that full cash payment must be made within "seven days." The "seven day" period refers to seven business days. 12 C.F.R § 220.4(c)(7) (1976). *See Pearlstein v. Scudder & German*, 429 F.2d 1136, 1137–38 n. 1 (2d Cir. 1970), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971). However, the securities industry normally uses the seventh *calendar* day as the settlement date. *See Naftalin & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 469 F.2d 1166, 1173 (8th Cir. 1972). Thus, in this case February 16, 1972 was the settlement date.

2. This transfer was later rescinded and described as having been erroneously made.

3. Restatement (Second) of Torts § 222A(1) (1965).

this were not the case, we can discern no damages accruing to the Blankens because of the detention of the stock.[4] Pursuant to the August order of the court, they received the stock, which they originally had acquired as a long term investment. There is no evidence that they sought to sell and they have received all dividends.

As to the trial court's conclusion that Harris, Upham had failed to sustain its burden in seeking damages for the Union stock,[5] the issue becomes more complex. The purchase of this stock by the Blankens was *disputed*. Quite apart from the testimony of the investor, there is support in the broker's evidence that less than an ordinary standard of care was followed with regard to its actions after the purported purchase. Thus while the corporation asserted that it was only after the loss became a reality that Blanken claimed that his instructions to sell at a fixed price had not been honored, it is also true that its manager-Vice President knew as early as two days after the trade (having received a telephone call from Blanken's son complaining of pressure tactics) that there would be difficulty in connection with the purchase. There was also testimony that Blanken had failed to settle promptly on previous occasions. In spite of these facts, and in spite of the failure of Blanken to communicate with the broker as he had promised or to make payment on the settlement date of February 16th, the corporation retained the stock without payment until March 3.

These circumstances reinforce the trial court's conclusion that Harris, Upham acted at its own peril in extending credit to plaintiff and moving plaintiff's cash account to a margin account.[6] However, we are left at a loss as to *when* it was that Harris, Upham acted at its own peril.

We cannot assume that the trial court meant that Harris, Upham was acting at its own peril in dealing with Blanken in the first instance. Even if this were possible from a reading of the language of the judgment,[7] there is the additional hurdle posed by the trial court's specific finding that damages would be speculative *because* Harris, Upham failed to prove the value of the stock on the settlement date, February 16th. However, the date of February 16th becomes relevant *only* if there was a valid purchase in accordance with the contract between Blanken and his broker on the 9th, which Blanken was to honor by the 16th. *Cf. R. Baruch and Company v. Springer,* D.C.Mun.App., 184 A.2d 206 (1962).

■ The crux of the problem in this court is apparent. We are unable to determine the facts upon which the trial court based its conclusion that Harris, Upham was not entitled to recover damages. This is because the trial court failed to make a specific finding as to the matter in dispute, *i. e.,* whether Blanken was obligated as of

---

4. With even greater reason, the instant facts do not suggest capricious conduct suggesting punitive damages due the investors.

5. The trial court determined in its conclusions of law that

   it would be pure speculation and conjecture to award any damages to defendant on its counterclaim since there was no evidence as to the value of the stock of Union Corporation on February 16, 1972. Defendant acted at its own peril in extending credit to plaintiff and moving plaintiffs [sic] cash account to a margin account.

6. Regulation T, 12 C.F.R. § 220 (1976), promulgated by the Federal Reserve Board

pursuant to Section 7 of the Securities Exchange Act of 1934, 15 U.S.C. § 78g (1970), requires that all securities purchased for cash accounts are to be paid in full within seven days, barring *exceptional* circumstances on *application* of the broker-dealer. 12 C.F.R. § 220.4(c)(6) (1976). Therefore, having not received full payment from Blanken by the settlement date, Harris, Upham was required by law to sell the stock.

7. The judgment dismissed "for the failure of [Harris, Upham] to sustain its burden of proof."

February 9th by reason of a valid purchase made in accord with his instructions. We therefore find it necessary to remand for a determination as to whether Blanken was so obligated and if so, the measure of any damages suffered by Harris, Upham.

*It is so ordered.*