**SAVOY CONSTRUCTION CO., INC., Appellant,**

v.

**ATCHISON & KELLER, INC., Appellee.**

**No. 11465.**

District of Columbia Court of Appeals.

Argued Oct. 18, 1977.

Decided July 3, 1978.

Steven G. Friedman, Washington, D. C., with whom C. Richard Beyda and Daly D. E. Temchine, Washington, D. C., were on the brief, for appellant.

Mark P. Friedlander, Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and GALLAGHER and HARRIS, Associate Judges.

HARRIS, Associate Judge:

This appeal arises from a conversion action brought by appellee, Atchison & Keller, Inc. ("A & K"), against appellant, Savoy Construction Co., Inc. ("Savoy"), seeking damages for certain tools and equipment which allegedly were seized and used by Savoy during August 1974. Savoy appeals from a jury verdict awarding compensatory damages in favor of A & K in the amount of $34,700.48. Savoy contends: (1) that the trial court erred in not directing a verdict for, or granting judgment notwithstanding the verdict in favor of, Savoy; (2) that the court erred in overruling objections to the proof submitted by A & K as to the fair market value of the tools and equipment in question; and (3) that the court erred in failing to direct a partial verdict, or grant a partial judgment notwithstanding the verdict, so as to limit that portion of the compensatory damages which was awarded to A & K for the conversion of a forklift. We conclude that only the third contention has merit.

## I

In September 1973, A & K entered into an oral contract with Savoy to perform the mechanical subcontracting work on three projects. They included an enlisted men's barracks at Walter Reed Army Medical Center and the Penthouse condominium apartment and office building in Towson, Maryland.

By November 1973, the parties orally had agreed upon the final contract price for the Walter Reed and Penthouse projects. Shortly thereafter, A & K began its work on both projects, placing men, tools, and equipment on the job sites. On July 31, 1974, a written contract was entered into for the Walter Reed job.[1] In late July and early August of 1974, a financial dispute arose between A & K and Savoy. As a result of the dispute, A & K virtually stopped work on the Walter Reed project.

Savoy claimed that after A & K pulled its men off the Walter Reed project, A & K's superintendent locked all of its tools inside its own office and construction trailers and turned the keys to those trailers over to Savoy's project superintendent. A & K's employees then abandoned the site without attempting to take any of their tools with them.

A & K's version of the departure is markedly different. Testimony presented by A & K indicated that A & K's tools and equipment on both the Walter Reed and Penthouse jobs were locked up by Savoy employees at the express direction of the Ex-

---

1. The United States District Court for the District of Columbia later adjudged the contract to be invalid, determining that it was obtained through the use of duress by Savoy. See Memorandum Opinion, Findings of Fact and Conclusions of Law, entered on March 13, 1975, in *United States ex rel. Atchison & Keller, Inc. v. Savoy Construction Co., et al.,* Civil Action No. 74–1267. That ruling was not made part of the record on appeal.

ecutive Vice-President of Savoy. Roland Kinser, the President of A & K, testified that on or about August 1, he requested the return of his company's tools and equipment but that his request was refused.

In March 1975, following the ruling of the United States District Court which declared the Walter Reed contract to be invalid, A & K filed its suit for conversion. Seven months later, Savoy completed work at the Walter Reed project and offered to return the A & K equipment that had been used on that project. A & K declined the offer. No offer was made to return the equipment in use at the Penthouse project, which was still under construction.

## II

■ Savoy claims that it lawfully came into possession of A & K's tools and equipment, and that no demand for the return of those items was made by A & K. We have held that conversion involves an "unlawful exercise of ownership, dominion and control over the personalty of another in denial or repudiation of his right to such property." *Blanken v. Harris, Upham & Co.,* D.C.App., 359 A.2d 281, 283 (1976). Even where a defendant's initial possession of property is lawful, a demand for its return by the plaintiff may render the continued possession unlawful and show its adverse nature. *See Shea v. Fridley,* D.C.Mun.App., 123 A.2d 358, 361 (1956).

■ If A & K's version of the facts is correct, a suit for conversion was justified. The evidence can support a finding that Savoy unlawfully possessed A & K's property, and A & K's Mr. Kinser testified that he requested the return of the property. Acceptance of Savoy's assignment of error, in effect, would require us to discredit the testimony of Kinser and reverse the jury's factual determination. This we decline to do. When

either one of two different conclusions might reasonably have been drawn from [the evidence] . . . the appellate court may not reweigh the evidence or override the findings, except where it clearly appears they are manifestly wrong. [*Nolan v. Werth,* 79 U.S.App. D.C. 33, 33–34, 142 F.2d 9, 9–10 (1944). *See Capitol View Realty Co. v. Cohen,* D.C.Mun.App., 124 A.2d 853, 856 (1956); *Parlett Ford, Inc. v. Sosslaw,* 19 Md.App. 320, 311 A.2d 443 (1973).] [2]

## III

Savoy's second claim of error is that the trial court erred in allowing A & K's testimony concerning damages to be considered by the jury. The trial judge correctly instructed the jury that A & K was required to present proof of the fair market value of the converted goods, as of the time of conversion, in order to recover compensatory damages. The court defined fair market value as

> that price which the willing purchaser would be willing to pay to a willing seller, without any compulsion on the part of either party to buy or sell the property as it is found at the time and place of the conversion.

A & K's Mr. Kinser and Maurice Cavey, the rental manager of a branch of the Rental Tool and Equipment Company, testified as to the value of the tools and equipment. Although Cavey was not certified as an expert by the trial court, he was familiar with the value of tools and equipment used in the trade (including tools used in plumbing and heating and air-conditioning work) and Savoy did not seek to exclude his testimony.

Savoy now seeks to discredit Cavey's testimony by asserting that his opinion of the value of the tools was based on the assumption that he was pricing new, rather than

2. *See Simmonds v. Capital Transit Co.,* 79 U.S. App.D.C. 371, 372, 147 F.2d 570, 571 (1945), where the court said:

> In other words, construing the evidence most favorably to appellant and giving to him the full effect of every legitimate inference there-

> from—as the law requires—reasonable men might well differ in their conclusions, upon the evidence so considered. No more is required to sustain the verdict against a motion for judgment n. o. v.

used, tools. However, on cross-examination, counsel for Savoy inquired of Mr. Cavey:

Q. And if you were trying to evaluate those prices to determine whether they would be a fair price for a used tool, would you have concluded that those would have been fair prices for used tools?

A. Yes. I would have to say that they would be fair prices for used tools.

Q. In your opinion, then, a used tool and a new tool would have the same price?

A. As far as I'm concerned, and in the business that I am in, yes.

Cavey went on to explain that only if a tool were not serviceable would the used condition affect its value; only if the tool required repair would the used condition affect the amount of money he would be willing to pay for it.

■ Savoy correctly points out that neither Kinser nor Cavey personally examined the tools in question. However, Kinser stated that if the tools were not serviceable they would not have been put in use on the job. We recognize that in a conversion action the plaintiff shoulders the burden of proving every fact essential to the establishment of its right to recover damages from the defendant. Nevertheless, once the plaintiff has introduced evidence as to the amount of damage incurred, the burden then falls on the defendant to introduce evidence supporting a reduction of the damages claimed. In this case the defendant had the opportunity to introduce evidence demonstrating that some of the equipment was in need of repair. No such evidence was introduced, and there is nothing in the record to indicate that any of the tools was not fully serviceable at the time of conversion.

■ Savoy also asserts that Kinser's estimates of A & K's damages improperly were based on replacement costs rather than on fair market values. While Kinser did state that, in his opinion, fair market value and replacement cost amount to approximately the same thing, he pointed out that the prices he set forth were less than the replacement costs, thereby indicating that he took into account the used condition of the tools. Replacement costs are relevant in determining fair market value, and since the jury was properly instructed on the appropriate method of calculating the fair market value of the converted tools and equipment, we cannot say that Savoy was prejudiced by the introduction of this testimony.

## IV

■ Savoy's third contention focuses on the trial court's unwillingness to limit the compensatory damages awarded to A & K for the conversion of its forklift, which was one of the items of equipment used at the Walter Reed site. A & K obtained an award of $11,752 for the loss of that piece of equipment, even though its equity interest in the forklift amounted only to about $5,000 (comprising the down payment, sales tax, and two installment payments).

The forklift had been purchased by A & K from the John Deere Corporation (as a conditional vendor) under a conditional sales contract. A & K correctly points out that Savoy converted the forklift, did not maintain the payments on it, and later surrendered it to the John Deere representatives who came to repossess it. A & K acknowledged, however, that it also gave permission to the John Deere Corporation to repossess the equipment.

The forklift subsequently was sold at foreclosure by the conditional vendor, and Savoy claims that no deficiency obligation on the part of A & K resulted from that sale. The record does not reflect that the conditional vendor asserted any deficiency claim against A & K subsequent to the foreclosure sale. We concur in the reasoning of the Supreme Court of California in *Goldberg v. List,* 11 Cal.2d 389, 79 P.2d 1087 (1938), that

the reason for the rule permitting recovery by the owner of a qualified or limited interest of the full value of personal property converted, rests not upon the fact that the converter is a stranger and owns no interest in the personal property,

but upon the fact that the owner of the qualified interest in addition to his own loss sustains a liability toward one owning a superior interest, which will need to be satisfied. [79 P.2d at 1090. *See Scroggins Farms Co. v. Commodity Credit Corporation,* 60 F.Supp. 119, 123–24 (E.D.Ark.1945).]

On the other hand, where—as appears to be true here—the conditional vendee is not liable for, and has not paid the balance of the full value of the property converted (presumably because the conditional vendor was satisfied by the proceeds of the foreclosure sale), it would not be appropriate to permit the vendee to recover more than an amount equal to its equity interest in the subject property. A greater recovery would amount to a windfall for the conditional vendee, leading to its unjust enrichment. Accordingly, we agree with appellant that the award of $11,752 for the conversion of the forklift was excessive. Therefore, we remand the case to the trial court with instructions to enter a partial judgment notwithstanding the verdict limiting the compensatory damages awarded to A & K for the loss of the forklift to an amount to be determined in a manner consistent with this opinion. In all other respects, the judgment appealed from is affirmed.

*Affirmed in part, reversed in part, and remanded.*